313 S.E.2d 445

**Fred McDONALD**

v.

**Gary YOUNG, Sheriff, etc.**

No. 15933.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 18, 1984.

Decided March 2, 1984.

David B. Cross, Pros. Atty., Wellsburg, for appellant.

Joseph W. Bonie, Follansbee, for appellee.

HARSHBARGER, Justice:

Fred McDonald was a Brooke County deputy sheriff when Gary Young became sheriff on January 1, 1981. Young informed all his deputies that it was mandatory that they each be certified before July, 1983 by the Governor's Law Enforcement Training Subcommittee to have met the minimum level law enforcement officer qualifications.

Certification could be obtained through years of service, former training, or by completing a training program at the State Police Academy at Institute in Kanawha County. W.Va.Code, 30–29–5. McDonald was not certified, and was one of three deputies who needed to take the training.

He was thrice accepted by the academy. The first time, he requested and was granted a delay so that he could finish college courses he was taking. After his second acceptance, he asked Sheriff Young to delay his admission again. He had applied for a position in another police department and felt it would be an unnecessary expenditure from the county budget to send him to the academy if he was not staying on as a county employee. McDonald did not get the new job, so Young informed him again that he wanted him to take the academy course for certification and get it over with.

McDonald was reaccepted for the November 1, 1982 class.

In the meantime, he requested that the governor's committee grant him certification because he had relevant classroom hours earned elsewhere, but he was denied. W.Va.Code, 30–29–5(c).

A week before his November 1, 1982 entrance date at the academy, he took vacation time. He had purchased the necessary clothing for training, and submitted bills to the county for reimbursement. The sheriff provided him a car and gas credit cards for his trip. He arrived at the academy at noon on November 1, and returned home that evening, after six hours in residence.

The next morning he went to the sheriff's office, but neither the sheriff nor Chief Deputy Ickes was there. He called the sheriff's home, got no answer, and called the chief deputy at his home, telling him that he had left the academy and was back home. He said that he was going to try to appeal his request for certification. After seeing the other trainees and curriculum, he decided that he had taken the necessary courses and had much more experience and education than the others there.

The chief deputy told him to notify the sheriff. McDonald responded that he had tried but could not reach him. Then McDonald told Ickes that since he was not scheduled to work that week, he would take his remaining vacation time. The chief approved his request on the phone, but told him again to call the sheriff. Mc-

Donald testified that he tried to call again the next day, but could not reach the sheriff and instead spoke with a Lieutenant Bado. The sheriff testified he was available to take McDonald's calls both days if he would have persisted in trying to reach him.

On November 5, McDonald received a certified letter from the sheriff notifying him that he was suspended, and that his suspension would result in permanent discharge if he did not request a public hearing. The notice of intent to discharge was predicated on McDonald's gross misconduct consisting of leaving the academy knowing that the training was a requirement of continued employment, notifying the chief deputy of his return but not talking to the sheriff even though he was available, taking vacation time on the week of his return and for "a failure to perform all lawful duties assigned to you by the Sheriff of Brooke County in an efficient and proper manner as provided in Section I, item one, Rules and Regulations for Deputy Sheriffs and Dispatchers of Brooke County as in effect commencing with April 22, 1982."

McDonald requested a public hearing before the Brooke County Civil Service Commission, and after the hearing, the commission decided two to one that his dismissal was justified.

McDonald then appealed per W.Va.Code, 7–14–17, and the circuit judge reversed the commission, concluding:

1. The Civil Service Commission Members acted improperly in that they did not make known the findings of fact upon which they based their decision.

2. The testimony did not demonstrate to the Court that the Rules and Regulations mentioned above had been Promulgated as required by West Virginia Code 7–14–7; the Sheriff admitted that the Petitioner had not been given a copy of the same; nor had they been posted; nor had he specifically made them known to McDonald.

3. Petitioner McDonald's conduct in regard to attending the Academy was erratic and indecisive to say the least; however, since he did have an appeal in mind on the board's refusal to certify him; and, even under the Sheriff's known policy, McDonald had until July, 1983, to comply with the Sheriff's directive, the Petitioner should not have been discharged, even though he did deserve some disciplinary action for acting as he did after going to the Academy for one day only.

The opinion in *Logan v. Dingess*, 161 W.Va. 377, 242 S.E.2d 473, is hereby applied by this Court with the effect, that discharge of McDonald, under the circumstances, cannot be sustained. The cause put forth by the Sheriff is not substantial, nor does it directly affect the rights and interest of the public.

Based upon the above three reasons, the Court is of the opinion that the decision of the Brooke County Civil Service Commission should not be sustained.

The Petitioner should be reinstated and should receive back pay from the date of his discharge.

Sheriff Young appealed to us.

A civil service commission is a fact-finding body and its rulings on questions of fact will not be reversed or set aside on appeal unless clearly wrong. *Pryor v. Hutchinson*, 167 W.Va. 679, 280 S.E.2d 325 (1981); *Kendrick v. Johnson*, 167 W.Va. 269, 279 S.E.2d 646 (1981); Syllabus Point 2, *Vosberg v. Civil Service Commission*, 166 W.Va. 488, 275 S.E.2d 640 (1981); Syllabus Point 2, *Childers v. Civil Service Commission*, 155 W.Va. 69, 181 S.E.2d 22 (1971); *Appeal of Prezkop*, 154 W.Va. 759, 179 S.E.2d 331 (1971). Dismissal of a civil service employee requires a showing of good cause, and that cause must be of a substantial nature directly affecting the rights and interests of the public. *City of Logan v. Dingess*, 161 W.Va. 377, 242 S.E.2d 473 (1978). Whether an employee is guilty of gross misconduct justifying dismissal must be decided on the facts of each case. *Bone v. West Virginia Department of Corrections*, 163 W.Va. 253, 255 S.E.2d 919 (1979).

The circuit judge wrote in her third enumerated paragraph that McDonald deserved discipline for his behavior about at-

tending the academy, but that his misconduct did not meet the *Logan v. Dingess, supra,* standard for dismissals. We find that dismissal was a punishment within the realm of choices for the sheriff and civil service commission, and their decisions were not clearly wrong.

A sheriff is responsible for providing training for his deputies, and "may be liable for the injuries resulting from the tortious acts of his deputies which result from a lack of training or supervision." *Mozingo v. Barnhart,* 169 W.Va. 31, 285 S.E.2d 497, 499 (1981), and Syllabus. It is critical to the safety of all West Virginia citizenry that sheriffs and their deputies be well trained. Sheriff Young set July, 1983 as the final date for achieving certification. In fact, Code, 30–29–5(h) gave law enforcement officers in a civil service system two years grace from the enactment of the certification requirements (July, 1981) before the provisions became mandatory; but Code, 30–29–5(g) (formerly (f)) grants a sheriff authority to require more than the minimum statutory standards.

In *Bone v. West Virginia Department of Corrections, supra,* we found that disobedience to a lawful order of a superior officer was gross misconduct warranting discharge:

> It would indeed be an unusual circumstance which would permit a penitentiary guard to make his own determination as to the lawfulness of an order given him. Such guard is charged with the safety, not only of the inmates but also of the public on certain occasions. He is in a position similar to that of personnel in the military service. To obey orders from his superiors is a prime obligation of his employment and the flagrant disobedience thereof constitutes substantial cause for dismissal. Of course, if the order were blatantly unlawful, the guard should be held blameless upon his refusal to obey. No such unlawful order was involved in this case and the employee's persistent refusal to obey the lawful order of his superior officer constituted

gross misconduct warranting dismissal. *Bone v. West Virginia Department of Corrections, supra* 163 W.Va. at 258, 255 S.E.2d at 921.

Orders to deputy sheriffs must be obeyed for the same reasons orders to penitentiary guards must. *Bone* is decisive precedent, and indicates that *Logan v. Dingess, supra,* standards were met here, contrary to the decision of the circuit court. As in *Bone,* there is no challenge that the sheriff's order was unlawful.

■ The court also found that McDonald did not have notice of the rule under which he was discharged. The record reveals that he may not have seen a written copy of the rule; but there is no doubt that he knew he was obliged to follow all lawful orders of the sheriff. He was dismissed because he did not obey an order from his superior. He certainly knew he should obey orders.*

Finally, the court found problems with the civil service commission's lack of findings of facts. We do too, but as we wrote in *Bone,* substantial compliance with procedures may be sufficient to uphold a discharge. The finding by the commission was that just cause existed for the discharge. This is not explicit, to say the least. It amounts to a conclusory statement incorporating statutory language. Ordinarily that is too unclear to permit adequate review. *Harrison v. Ginsberg,* 169 W.Va. 162, 286 S.E.2d 276 (1982); *Citizens Bank v. West Virginia Board of Banking and Financial Institutions,* 160 W.Va. 220, 233 S.E.2d 719, 726–727 (1977); Syllabus Point 3, *Mountain Trucking Co. v. Public Service Commission,* 158 W.Va. 958, 216 S.E.2d 566 (1975); *Clarke v. West Virginia Board of Regents,* 166 W.Va. 702, 279 S.E.2d 169, *appeal after remand,* 171 W.Va. 662, 301 S.E.2d 618 (1981).

■ But the fact is clear and undisputed about McDonald's failure to obey the order to attend the academy. McDonald knew from his discharge letter this distinct reason for his discharge, Syllabus Point 1, *Scott v. Ernest,* 164 W.Va. 595, 264 S.E.2d

---

* All employees should be given a copy of rules and regulations by which they are governed.

That would remove the potential for due process lack-of-notice attacks.

635 (1980), and the circuit court knew from the record and made additional factual findings about McDonald's erratic and indecisive behavior. This case differs from *Airhart v. Carpenter,* 164 W.Va. 73, 260 S.E.2d 729 (1979), which we had to remand to determine the reasons for discharge. We know what McDonald did. No facts need reconciliation. *See generally* 2 Am. Jur.2d *Administrative Law* § 449.

In future cases, civil service commissions should articulate findings of fact in their orders so that parties and reviewing courts will know the bases of their decisions.

Reversed.