386 S.E.2d 504

**Ronald G. ROBERTS**

v.

**Stephen F. GREINER, Sheriff, and Wood County Deputy Sheriffs' Civil Service Commission.**

No. 18809.

Supreme Court of Appeals of West Virginia.

Nov. 3, 1989.

**138**

Michele Rusen, Asst. Pros. Atty., Parkersburg, for Stephen F. Greiner.

William E. Kiger, Parkersburg, for Ronald G. Roberts.

PER CURIAM:

Pursuant to *W.Va.Code*, 7-14-17(b) [1981], this case is before the Court upon the appeal of Stephen F. Greiner, Sheriff of Wood County, and the Wood County Deputy Sheriffs' Civil Service Commission (Commission) from the July 29, 1988 decision of the Wood County Circuit Court which reversed a prior decision of the Commission that affirmed the sheriff's dismissal of the appellee, Ronald G. Roberts. The appellants contend that the trial judge erroneously reversed the Commission's decision which was not clearly wrong, as it was supported by substantial evidence. Syl. pt. 1, *Frank's Shoe Store v. Human Rights Commission*, 179 W.Va. 53, 365 S.E.2d 251

(1986); syl. pt. 2, *Shepherdstown V.F.D. v. Human Rights Commission*, 172 W.Va. 627, 309 S.E.2d 342 (1983). Syllabus, *Kendrick v. Johnson*, 167 W.Va. 269, 279 S.E.2d 646 (1981). We agree and reverse the decision of the circuit court and reinstate the final order of the Commission entered March 25, 1988.

By letter dated August 18, 1987, the appellant, Sheriff Stephen F. Greiner, terminated the employment of the appellee, Ronald G. Roberts. Roberts had fourteen years of service and obtained the rank of lieutenant in the sheriff's department. The termination letter informed Roberts that he was being released due to a pattern of sexual harassment of several women over a five-year period wherein Roberts would use his position as a police officer to obtain sexual favors.[1]

Two hearings were conducted on the matter, and seven female witnesses were called by the sheriff. Two witnesses, a magistrate's assistant and an employee of a bakery located in an area patrolled by Roberts, testified that they had contact with Roberts regularly, either in person, or over the telephone; however, their contact was not of an implicitly or explicitly sexual

---

**1.** The original termination letter listed four instances, in some detail, of sexual harassment. The four instances did not contain the names of the females, the majority of whom were married women. Two of the incidents did not provide Roberts with dates.

When the appellee appealed the decision to the Wood County Civil Service Commission pursuant to *W.Va.Code*, 7-14-17(a) [1981], he moved for his immediate reinstatement, contending that the termination notice did not adequately inform him of the allegations. The Commission instead continued the case and the sheriff provided the appellee with a supplemental letter that contained the names of the females and all dates of the events outlined in the previous letter.

Hearings were conducted on the termination on October 14, 1987 and February 4, 1988, during which time counsel for Roberts was able to thoroughly cross-examine witnesses for the sheriff and also present witnesses on his behalf. The appellee's contention that the termination notice lacked factual specificity is without merit, as the original notice contained sufficient detail of the events leading to his termination,

and the subsequent letter, which provided the names of several married women who complained to the sheriff, provided the appellee with "reasonable certainty and precision of the cause for his removal." Syl. pt. 2 and 3, *Snyder v. Civil Service Commission*, 160 W.Va. 762, 238 S.E.2d 842 (1977); *accord, Scott v. Ernest*, 164 W.Va. 595, 264 S.E.2d 635 (1980).

The appellee also contends that the sheriff is barred by the doctrine of laches from seeking the appellee's dismissal. The first instance of misconduct occurred in 1982. The last instance occurred in 1987, two months prior to the appellee's termination. As indicated in the termination letter of August 18, 1987, the sheriff attempted to rectify the problem by privately reprimanding the appellee in May, 1985. Therefore, the sheriff did not negligently fail to enforce his right to discipline the appellee and the appellee was not prejudiced by the sheriff's choice to privately reprimand the appellee in 1985, and eventually terminate him in 1987, when his conduct grew worse. Syl. pt. 2, *Mundy v. Arcuri*, 165 W.Va. 128, 267 S.E.2d 454 (1980); syl. pt. 3, *Carter v. Carter*, 107 W.Va. 394, 148 S.E. 378 (1929).

nature. A third witness, M.R.,[2] testified that she met the appellee while he was on duty. She had sexual intercourse with him several years later and was not implicitly or explicitly coerced.

A fourth witness, J.L., testified that in 1982 Roberts came to her home and made sexual advances. When she refused the advances, Roberts asked if she was "on drugs." At that time, the witness was married to an inmate of the penitentiary. She testified that the reference to drugs led her to believe that the appellee was "trying to pin something" on her in retribution for her failure to submit to his sexual advances.

A fifth witness, C.N., testified that from 1984 through 1987, Roberts, her husband's supervisor, periodically called her and requested to meet and discuss "problems" her husband was having at the sheriff's department. According to the witness, Roberts indicated he had "a lot of pull." The witness recalled one instance when Roberts, in uniform, attempted to pull her into a police cruiser. She testified that when she refused, Roberts followed her in the cruiser. Finally, she testified that in the spring of 1987 when she refused to meet with Roberts he threatened to enter her children's school in uniform and take her children in the cruiser.

A sixth witness, T.E., testified that in May, 1985, when she was divorcing a member of the sheriff's department, the appellee called her several times. He appeared at her home at 7:00 a.m. in his uniform pants and a t-shirt and grabbed her arm. He eventually left the residence.

A seventh witness, P.B., testified to the most recent incident. The witness testified that in July, 1987, prior to her divorce, she was engaged in an extramarital affair (with a man she subsequently married). She accidentally locked her keys in her automobile while at a motel. When she sought assistance from the sheriff's department, Roberts answered the call. He retrieved her keys and she departed. She testified that due to the circumstances, she never identified herself to Roberts.

A few days later, Roberts telephoned her, allegedly to verify that she indeed owned the automobile. When she asked Roberts how he was able to locate her, he responded "we have our ways." He then requested to meet her in a park.

The witness complied when Roberts mentioned "blackmail." She met Roberts, who was waiting beside his police cruiser in the park. She then testified that she informed Roberts that she was not intimidated by a threat of blackmail, as she was relocating. According to the witness, the two shook hands and parted ways. The witness testified that Roberts never blatantly asked her to engage in sexual activity; however, she felt that while shaking hands, Roberts was about to pull her toward him. She also testified that Roberts intimated that he didn't care that the witness was married, when he stated "what makes a difference, I'm married too."

Roberts presented various witnesses who vouched for his character and work record. Several co-workers testified that they never saw Roberts harass anyone in their presence. Roberts denied any improper conduct, but admitted to having an extramarital affair with witness M.R. while off duty.

 By final order dated March 25, 1988, "[a]fter an evaluation of the testimony" the Commission, by unanimous decision, found that the sheriff "met his burden of proof and has justified his dismissal of Lt. Ronald G. Roberts." [3]

---

**2.** We follow the practice of prior cases involving sensitive facts, and decline to use the names of the parties. *E.g., State v. Murray,* 180 W.Va. 41, 375 S.E.2d 405 (1988); *Committee on Legal Ethics v. Douglas,* 179 W.Va. 490, 370 S.E.2d 325 (1988).

**3.** The appellee raises three arguments concerning the order. First, he contends that the order was vague, which, according to the appellee, allowed the circuit court to supplant its view of the facts for those of the Commission. As discussed *infra,* the type of judicial review suggested by the appellee is contrary to the standard of review in administrative decisions that we articulated in syllabus point 2 of *Shepherdstown V.F.D. v. Human Rights Commission,* 172 W.Va. 627, 309 S.E.2d 342 (1983). We also note that the order, which the appellee contends is vague, was prepared by the appellee's counsel.

The appellee appealed the Commission's decision to the circuit court. By order entered July 29, 1988, the circuit court reversed the Commission's decision, reinstated Roberts and awarded him back pay.

In doing so, the court re-evaluated the testimony of the seven female witnesses and excerpted various aspects of their testimony. The court focused on the fact that Roberts was not in uniform during the course of several of these incidents. It also noted that, of the witnesses who believed they were harassed, Roberts never blatantly requested sexual intercourse. The court then noted that numerous witnesses testified to Roberts' "honesty and fair dealing." Therefore, according to the circuit court, "the evidence establishes, by a clear preponderance, that Roberts did not use his office for such purpose."

The standard for appellate review of administrative decisions was articulated by this Court in syllabus point 2 of *Shepherdstown V.F.D. v. Human Rights Commission,* 172 W.Va. 627, 309 S.E.2d 342 (1983):

Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: '(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority

or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.'

We recently noted that syllabus point 2 of *Shepherdstown* "concisely charts the process of judicial review to which the circuit court in such cases must adhere." *Frank's Shoe Store v. Human Rights Commission,* 172 W.Va. 53, 365 S.E.2d 251, 254 (1986). We further noted that adherence to *Shepherdstown* requires a reviewing court to "evaluate the record of the agency's proceeding to determine whether there is evidence in the record as a whole to support the agency's decision. The evaluation is conducted pursuant to the administrative body's findings of fact, regardless of whether the court would have reached a different conclusion on the same set of facts [citation omitted]." *Frank's Shoe Store, supra.*

This limited form of judicial review of administrative decisions applies with equal force to decisions of police civil service commissions:

'A final order of a police civil service commission based upon a finding of fact will not be reversed by a circuit court upon appeal unless it is clearly wrong or is based upon a mistake of law.' Syl. pt. 1, *City of Logan v. Dingess,* 161 W.Va. 377, 242 S.E.2d 473 (1978), *quoting,* Syl.

---

Second, the appellee, for the first time, raises an issue concerning the appointment of the Commission members. Commission member, James W. Deem's term expired on June 30, 1987. Deem continued to serve as a Commission member throughout these proceedings. On April 10, 1989, the Wood County Commission entered a *nunc pro tunc* order effective June 30, 1987, reappointing Deem as a Commission member through June 30, 1991. The appellee presents no evidence to suggest that the failure to enter the reappointment order was anything other than a clerical error, and has failed to present any evidence that such an error in any way prejudiced him.

Third, the appellee has presented several affidavits from Roberts, Roberts' wife, and three others, that a Commissioner informed Roberts after the meeting that the Commission would not overturn the sheriff's decision because Roberts "did not prove that these things did not happen." We reject the appellee's contention that this statement evinces that the Commission applied a standard of proof contrary to that contained in *W.Va.Code,* 7-14-17(a) [1983] which requires the "'removing sheriff' to justify his action." To read the statement in such a manner would require the Court to ignore the final order, wherein the Commission held that "the sheriff has met his burden of proof."

pt. 1, *Appeal of Prezkop*, 154 W.Va. 759, 179 S.E.2d 331 (1971).

Syllabus, *Kendrick v. Johnson*, 167 W.Va. 269, 279 S.E.2d 646 (1981). *Accord, McDonald v. Young*, 173 W.Va. 168, 313 S.E.2d 445 (1984).

■ The Commission's order indicates that "after an evaluation of the testimony," it decided to affirm the sheriff's decision to terminate Roberts. The Commission had a first-hand opportunity to hear and observe the witnesses' testimony. We have previously noted in other instances, that given the often subtle nature of sexual harassment, the evaluation of witness credibility by the trier of fact is given great weight. *Westmoreland Coal v. Human Rights Commission*, 181 W.Va. 368, 382 S.E.2d 562 (1989).

Three witnesses testified that they felt sexually threatened by Roberts, who used his position as a police officer to intimidate them. Witness C.N. felt that Roberts used his seniority over her husband as a threat, as well as Roberts' overt threat to remove her children from their school if she did not sexually submit to him. Witness J.L. felt that Roberts subtly intimated that he would investigate her if she did not sexually submit to him. Witness P.B. testified she felt compelled to meet with Roberts only because Roberts used information he obtained while performing his job to threaten blackmail.

We have previously held that "[t]he weight of authority throughout the United States is that the sensitive nature of a policeman's job, the strict need for both propriety and the appearance of propriety, ... allow a government employer to impose more rigorous controls on the outside activities of police officers." *McAtee v. Mentzer*, 174 W.Va. 49, 51, 321 S.E.2d 699, 702 (1984).

Based on the testimony of these three witnesses C.N., J.L. and P.B., the record contains substantial evidence for the Commission's order which upheld Roberts' dismissal for his attempts to gain sexual favors through his employment. Therefore, the circuit court order entered July 29, 1988 is reversed and the Commission's order, entered March 25, 1988, is reinstated.

Reversed.