394 S.E.2d 879

**R. Michael MANGUM, Sheriff of Raleigh County**

**v.**

**Robert L. LAMBERT.**

**No. 19077.**

Supreme Court of Appeals of West Virginia.

June 12, 1990.

James R. Sheatsley, Gorman, Sheatsley & Hutchison, L.C., Beckley, for R. Michael Mangum.

Warren A. Thornhill, III, Beckley, for Robert L. Lambert.

MILLER, Justice:

This is an appeal from an order of the Circuit Court of Raleigh County, dated November 18, 1988, which affirmed a ruling of the Raleigh County Deputy Sheriff's Civil Service Commission (Commission) granting Robert L. Lambert back pay and attorney's fees on the ground that he had been unjustly discharged from his employment with the Raleigh County Sheriff's Department (Department) by Sheriff R. Michael Mangum. Sheriff Mangum contends that he had good cause for firing Deputy Lambert. We agree, and we reverse the judgment of the circuit court.

By letter dated January 8, 1987, Sheriff Mangum advised Deputy Lambert, a seven-year veteran of the Department, that his employment was being terminated on the ground that on January 6, 1987, he had attempted to persuade Deputy Orville Lee Ayers, a new and untrained member of the Department, to dismiss, as a personal favor, charges of driving while intoxicated (DUI) filed against a motorist by Deputy Ayers on December 19, 1986.[1] Sheriff Mangum concluded: "This is unacceptable conduct and further it is illegal according to the WV Code 61-5-27 [(1923)]...."[2]

1. It appears that Deputy Lambert was acting on behalf of a friend, Dennis Roark, who was an acquaintance of the motorist. It further appears that on January 6, 1987, Deputy Lambert accompanied Deputy Ayers to magistrate court and had the junior deputy complete a complaint withdrawal form. Deputy Ayers subsequently instructed the magistrate to destroy the complaint withdrawal form. The charges against the motorist proceeded to trial and resulted in an acquittal.

2. W.Va.Code, 61-5-27, provides, in pertinent part:

Deputy Lambert requested a hearing before the Commission pursuant to W.Va. Code, 7–14–17 (1981).[3] At the hearing, conducted on November 9 and 13, 1987, Deputy Lambert admitted that he had asked Deputy Ayers to drop or reduce the DUI complaint, but denied that he had used harassment or intimidation. Sheriff Mangum introduced into evidence a written policies and procedures manual distributed to all deputies shortly after he took office in January, 1985. The manual provides, in pertinent part: "The authority to reduce or dismiss a [DUI] charge initiated by a member of this department shall rest exclusively with the Office of the Raleigh County Prosecuting Attorney or a duly appointed or elected member of the judiciary." Deputy Lambert admitted that he had received a copy of the manual, but stated that he had never read the policy prohibiting dismissal or reduction of DUI complaints. A number of other deputies testified that it had been common practice to drop or reduce charges at the request of a fellow deputy prior to Sheriff Mangum's tenure, but that the practice had been discontinued after he became sheriff.

On November 20, 1987, the Commission issued its findings. A majority of the three-member Commission concluded that Deputy Lambert's actions violated neither the policies and procedures manual nor W.Va.Code, 61–5–27. The Commission ruled that, as a consequence, there was no just cause for Deputy Lambert's dismissal and ordered that he be reinstated to his position and awarded back pay and attorney's fees.

Sheriff Mangum appealed this ruling to the circuit court. By order dated November 18, 1988, the circuit court ruled that the Commission's findings were not clearly wrong and affirmed the award of back pay and attorney's fees.[4] It is from this order that Sheriff Mangum now appeals.

We start with the standard of review which must guide our resolution of the issues involved. In Syllabus Point 1 of *Appeal of Prezkop,* 154 W.Va. 759, 179 S.E.2d 331 (1971), we stated: "A final order of a police civil service commission based upon a finding of fact will not be reversed by a circuit court upon appeal unless it is clearly wrong or is based upon a mistake of law." *See Johnson v. City of Welch,* 182 W.Va. 410, 388 S.E.2d 284 (1989); *Cline v. Roark,* 179 W.Va. 482, 370 S.E.2d 138 (1988); *City of Beckley v. Price,* 164 W.Va. 423, 264 S.E.2d 468 (1980). Although this standard was articulated in the context of the municipal police officers' civil service system, it is equally applicable to cases arising under the deputy sheriffs' civil service system.[5] *See Roberts v. Greiner,* 182

"If any person by threats, force, or otherwise, intimidate or impede, or attempt to intimidate or impede, any judge, justice of the peace [magistrate], juror, witness, arbitrator, umpire, or an officer or member of any court in the discharge of his duty as such, or by any means obstruct or impede, or attempt to obstruct or impede, the administration of justice in any court, he shall be guilty of a misdemeanor[.]"

3. The deputy sheriffs' civil service system was created in 1971 with the enactment of W.Va. Code, 7–14–1, *et seq.* The purpose of the statute may be stated to be "'to provide for a complete and all-inclusive system for the appointment, promotion, reduction, removal and reinstatement of'" deputies. Syllabus, in part, *Daniels v. McCulloch,* 168 W.Va. 740, 285 S.E.2d 483 (1981), *quoting* Syllabus Point 5, in part, *Dougherty v. City of Parkersburg,* 138 W.Va. 1, 76 S.E.2d 594 (1952). Coverage is mandatorily extended to full-time deputies in counties with a population of 25,000 or more. W.Va.Code, 7–14–1. In counties with less than 25,000 inhabitants, coverage under the statute is optional. W.Va.Code, 7–14–19. We have held that this disparate treatment does not violate equal protection principles. *State ex rel. Deputy Sheriff's Ass'n v. County Comm'n,* 180 W.Va. 420, 376 S.E.2d 626 (1988).

4. Deputy Lambert was reinstated pending Sheriff Mangum's appeal of the Commission's order, but it appears that he subsequently left his employment with the Department voluntarily. Accordingly, the only concern of the circuit court below was the propriety of the award of back pay and attorney's fees.

5. The provisions of W.Va.Code, 8–14–6, *et seq.,* the statute governing civil service for municipal police officers, are virtually identical in many respects to the provisions of W.Va.Code, 7–14–1, *et seq.,* the statute governing the deputy sheriffs' civil service system at issue in this case. The same similarities exist with respect to civil service systems of county correctional employees,

W.Va. 137, 386 S.E.2d 504 (1989); *McDonald v. Young,* 173 W.Va. 168, 313 S.E.2d 445 (1984); *Kendrick v. Johnson,* 167 W.Va. 269, 279 S.E.2d 646 (1981); *Scott v. Ernest,* 164 W.Va. 595, 264 S.E.2d 635 (1980).

The converse is also true. As we stated in Syllabus Point 1 of *American Federation of State, County & Municipal Employees v. Civil Service Commission,* 174 W.Va. 221, 324 S.E.2d 363 (1984):

> "'A final order of the Civil Service Commission, based upon findings not supported by the evidence, upon findings contrary to the evidence, or upon a mistake of law, will be reversed and set aside by this Court upon review.' Syl., *Guine v. Civil Service Commission,* 149 W.Va. 461, 141 S.E.2d 364 (1965)."

*Accord Blake v. Civil Serv. Comm'n,* 172 W.Va. 711, 310 S.E.2d 472 (1983); Syllabus Point 2, *Drennen v. Department of Health,* 163 W.Va. 185, 255 S.E.2d 548 (1979); *Hall v. Protan,* 158 W.Va. 276, 210 S.E.2d 475 (1974); Syllabus Point 3, *Yates v. Civil Serv. Comm'n,* 154 W.Va. 696, 178 S.E.2d 798 (1971).

The principal issue on appeal is whether the circuit court and the Commission erred in ruling that there was no just cause for Deputy Lambert's dismissal. W.Va.Code, 7–14–17, permits a sheriff to discharge a protected deputy only for "just cause."[6] In *Johnson v. City of Welch,* 182 W.Va. at 43, 388 S.E.2d at 287, our most recent statement on the issue, we expressed the following view:

> "Just cause has been defined as a substantial cause 'which specially relates to and affects the administration of the office, and must be restricted to something of a substantial nature directly affecting the rights and interest of the public. An officer should not be removed from office for matters which are trivial, inconsequential, or hypothetical, or for mere technical violations of statute or official duty without wrongful intention.' 67 C.J.S. *Officers* § 120b (1936). *See also City of Logan v. Dingess,* 161 W.Va. 377, 381, 242 S.E.2d 473, 475 (1978); *Thurmond v. Steele,* 159 W.Va. 630, 225 S.E.2d 210 (1976); *Guine v. Civil Service Commission,* 149 W.Va. 461, 141 S.E.2d 364 (1965)."

*See McDonald v. Young, supra; Kendrick v. Johnson, supra; Scott v. Ernest, supra.* This statement is virtually identical to Syllabus Point 1 of *West Virginia Department of Corrections v. Lemasters,* 173 W.Va. 159, 313 S.E.2d 436 (1984), which sets out the standard for judging "good cause" for dismissal under the state civil service system:

> "'*W.Va.Code* 29–6–15 [1977], requires that dismissal of a civil service employee be for good cause, which means misconduct of a substantial nature directly affecting the rights and interests of the public, rather than upon trivial or inconsequential matters, or mere technical violations of statute or official duty without a wrongful intention.' Syl. 1, *Oakes v. West Virginia Department of Finance and Administration,* [164 W.Va. 384], 264 S.E.2d 151 (1980)."[7]

*See Blake v. Civil Serv. Comm'n, supra; Serreno v. West Virginia Civil Serv.*

W.Va.Code, 7–14B–1, *et seq.,* and municipal fire companies, W.Va.Code, 8–15–11, *et seq.* Consequently, principles enunciated in the construction of one statute are quite often applicable where the same circumstances arise under another. *See Liller v. West Virginia Human Rights Comm'n,* 180 W.Va. 433, 438 n. 9, 376 S.E.2d 639, 644 n. 9 (1988).

6. W.Va.Code, 7–14–17(a), provides, in pertinent part:

> "On and after the effective date [July 1, 1971] of this article, no deputy sheriff of any county subject to the provisions of this article shall be removed, discharged, suspended or reduced in rank or pay except for just cause, which shall not be religious or political, except as provided in section fifteen [§ 7–14–15] of this article; and no such deputy shall on and after the effective date [July 1, 1971] of this article, be removed, discharged, suspended or reduced except as provided in this article and in no event until he shall have been furnished with a written statement of the reasons for such action."

7. The state civil service system was completely revamped by the Legislature in 1989. *See* 1989 W.Va.Acts ch. 29. The Civil Service Commission was abolished and replaced by the State Personnel Board, a part of the newly created Division of Personnel. W.Va.Code, 29–6–5, 29–6–6, 29–6–9 (1989).

*Comm'n,* 169 W.Va. 111, 285 S.E.2d 899 (1982).

We adopt these principles and amend them to apply to deputies: W.Va.Code, 7-14-17, requires that dismissal of a deputy sheriff covered by civil service be for just cause, which means misconduct of a substantial nature directly affecting the rights and interests of the public, rather than upon trivial or inconsequential matters, or mere technical violations of statute or official duty without a wrongful intention. The burden of proving that there was just cause for a deputy's dismissal is on the sheriff who took such action. W.Va.Code, 7-14-17(a). *See Roberts v. Greiner, supra; Cline v. Roark, supra; Martin v. Pugh,* 175 W.Va. 495, 334 S.E.2d 633 (1985).

Sheriff Mangum found just cause for Deputy Lambert's dismissal in his attempts to persuade Deputy Ayers to reduce or drop the DUI complaint as a personal favor. The Commission and the circuit court apparently concluded that because he did not overtly threaten or intimidate Deputy Ayers, Deputy Lambert had not violated W.Va.Code, 61-5-27. They further concluded that Deputy Lambert had not violated the Department's written policy because the policy did not expressly prohibit one deputy from asking another to dismiss or reduce a charge. The Commission and the court concluded that in the absence of a statutory or policy violation, there was no showing of just cause for firing Deputy Lambert.

■ As an initial matter, we note that proof of the use of threats, force, or intimidation is not necessary to show a violation of W.Va.Code, 61-5-27. The statute prohibits attempts "to intimidate or impede" a judicial officer in the discharge of his official duty "by threats, force, *or otherwise,*" and attempts "to obstruct or impede" the administration of justice "by *any* means." [8] (Emphasis added). Thus, it has been held that the statute applies to one who pays a witness to absent himself from court. *State v. Baller,* 26 W.Va. 90 (1885). It has also been suggested that a violation of the statute occurred where, without threats or monetary inducements, an attorney attempted to persuade a witness not to testify in court. *Committee on Legal Ethics v. Blair,* 174 W.Va. 494, 327 S.E.2d 671 (1983), *cert. denied,* 470 U.S. 1028, 84 L.Ed.2d 783 (1985).

Clearly, then, the use of threats or force is not necessarily an essential element of the offense of obstruction of justice as defined in W.Va.Code, 61-5-27. The obstruction may be by other means. The Commission and the circuit court,[9] therefore, erred in concluding that in the absence of threats or force, Deputy Lambert could not have violated this statute. The error is one of law and warrants reversal of the judgment of the circuit court.

■ Nor do we believe that the Department's written policy as to dismissal of DUI charges is inapplicable here simply because it does not specifically prohibit one deputy from asking another to drop a criminal complaint. In our recent decision of *In the Matter of Crislip,* 182 W.Va. 637, 391 S.E.2d 84 (1990), we concluded that a magistrate who summarily dismissed and attempted to persuade a police officer to withdraw criminal complaints without seeking the approval of the prosecuting attorney, as required by county policy, was guilty of an ethical violation. In Syllabus Point 4 of *Crislip,* we stated: "An *ex parte* dismissal by a magistrate of a criminal or civil case, without authorization by statute or rule or without other good cause shown, is a violation of Canon 3 of the Judicial Code of Ethics." In note 5 of *Crislip,* 182 W.Va. at 642, 391 S.E.2d at 89, we explained the policy behind the rule:

> "Obviously, once criminal charges have been filed, the State has a substantial interest in seeing that the criminal laws are enforced. No doubt, it was for this reason that Marion County evolved

8. For the relevant text of W.Va.Code, 61-5-27, see note 2, *supra.*

9. The circuit court mentioned the Commission's ruling on this point in its memorandum order, but did not directly address the validity of the ruling. Instead, the court ruled that it was bound by the Commission's findings of fact.

the practice of requiring the magistrate to obtain not only a written withdrawal from the complaining witness, but also the approval of the prosecutor before a case can be dismissed."

Clearly, the same considerations underlie the Department's policy placing the exclusive authority to dismiss or reduce DUI charges in the hands of the prosecutor and the judiciary. A deputy should not be able to circumvent this policy by attempting to persuade a fellow deputy to do what he himself is without authority to do.[10] Moreover, attempting to persuade or persuading a police officer to withdraw criminal charges against a third party for personal reasons may amount to an attempt to obstruct or impede the administration of justice in violation of W.Va.Code, 61–5–27. *See Rice v. United States,* 356 F.2d 709 (8th Cir.1966); *People v. Somma,* 123 Mich. App. 658, 333 N.W.2d 117 (1983). *See generally* 58 Am.Jur.2d *Obstructing Justice* § 56 (1989).

However, even if we assume that Deputy Lambert's activities did not violate either the criminal statute or the policies and procedures manual, such a violation need not be shown to demonstrate just cause for the decision to fire a civil service employee. As we noted in *West Virginia Department of Corrections v. Lemasters,* 173 W.Va. at 162, 313 S.E.2d at 439: "[S]eriously wrongful conduct can lead to dismissal even if it is not a technical violation of any statute.... The test is not whether the conduct breaks a specific law, but rather whether it is potentially damaging to the rights and interests of the public." *See Drown v. West Virginia Civil Serv. Comm'n,* 180 W.Va. 143, 375 S.E.2d 775 (1988); *Thurmond v. Steele,* 159 W.Va. 630, 225 S.E.2d 210 (1976).

We believe a police officer's attempt to persuade a fellow officer to dismiss a criminal charge for personal reasons meets this test. Accordingly, we find just cause for Deputy Lambert's dismissal and conclude that the Commission and the circuit court were clearly wrong in ruling otherwise.

Finally, Deputy Lambert contends that the termination letter was inadequate notice of the reason for his removal. We have recognized that due process requires a civil service employee to be given adequate notice of the reasons for his dismissal. *See Clarke v. West Virginia Bd. of Regents,* 166 W.Va. 702, 279 S.E.2d 169 (1981); *Snyder v. Civil Serv. Comm'n,* 160 W.Va. 762, 238 S.E.2d 842 (1977). In Syllabus Points 2 and 3 of *Snyder,* we discussed standards for determining the adequacy of such notice:

> "2. The sufficiency of a notice of dismissal to a classified civil service employee depends on whether the employee was informed with reasonable certainty and precision of the cause of his removal.
>
> "3. A notice of dismissal to a classified civil service employee will generally be adequate if it sets out sufficient facts of the alleged misconduct so that its details are known with some particularity."

*See Roberts v. Greiner, supra; Scott v. Ernest, supra.*

Here, the conduct upon which Deputy Lambert's discharge was based was set out with particularity in the termination letter. The letter set forth the names of the other persons involved, the dates on which the events in question occurred, and the specific allegations made against Deputy Lambert. We conclude that the notice was adequate to advise Deputy Lambert "with reasonable certainty and precision of the cause of his removal." Syllabus Point 2, in part, *Snyder v. Civil Serv. Comm'n, supra.* Accordingly, we find no defect in notice warranting remand of the case for

10. Deputy Lambert asserted below that he was not aware of the written policy at the time of this activity. He plainly admitted, however, that he had received a copy of the manual. Furthermore, testimony showed that the practice of asking another deputy to reduce or dismiss charges had ceased approximately two years earlier when Sheriff Mangum took office. Upon these facts, we cannot say that Deputy Lambert's failure to acquaint himself with Department policy excuses his misconduct.

further proceedings.[11]

For the reasons stated herein, we conclude that the circuit court clearly erred in affirming the decision awarding Deputy Lambert back pay and attorney fees. The judgment of the Circuit Court of Raleigh County is, therefore, reversed.

Reversed.

11. On appeal, Sheriff Mangum raised a claim of bias on the part of two of the Commission. In view of our resolution of the case, we decline to discuss this issue.