600 S.E.2d 223

**Criminalist V Terry G. MONTGOMERY, Petitioner Below, Appellant.**

v.

**WEST VIRGINIA STATE POLICE and Colonel Gary L. Edgell, Superintendent, Respondents Below, Appellees.**

**No. 31644.**

Supreme Court of Appeals of West Virginia.

Submitted: April 28, 2004.

Filed: June 17, 2004.

---

512

David L. White, R. Christopher Anderson, Masters & Taylor, L.C., Charleston, for the Appellant.

Darrell V. McGraw, Jr., Attorney General, Charleston, West Virginia, Steven R. Compton, Assistant Attorney General, South Charleston, for the Appellees.

PER CURIAM.

Terry G. Montgomery appeals from the March 21, 2003, order of the Circuit Court of Kanawha County which affirmed an administrative decision upholding his discharge from the Appellee West Virginia State Police ("State Police"). Appellant's discharge stemmed from criminal charges filed against him for operating a motor vehicle while under the influence of alcohol. Because Appellant was acquitted for violating the criminal statute upon which his discharge was based, he contends that it was error for the lower court to uphold his discharge. In addition, Appellant argues that the State Police failed to introduce any affirmative evidence demonstrating that he actually operated the subject motor vehicle while under the influence of alcohol. Upon our full review of this matter, we find no error and accordingly, affirm.

## I. Factual and Procedural Background

The events surrounding the basis for Appellant's discharge, which are essentially undisputed, were summarized by the administrative hearing examiner as follows:

At approximately 7:05 A.M. on Thursday, October 29, 1998, a telephone report was made to the WVSP headquarters that a vehicle was parked behind WVSP headquarters in an odd fashion. The presence of the vehicle was reported to Major (now Lt. Colonel) James S. Powers, who found he could see the cruiser through his office window. He left his office on foot to inspect the vehicle.

That inspection by Major Powers revealed that there was a cruiser, stipulated by the parties to be the white Ford Crown Victoria unmarked cruiser assigned to the Grievant [Appellant], parked with the headlights on, with its engine running, with the driver's side door open, and parked in an informal manner with three of the four wheels off the pavement in the grass. That inspection also revealed that the Grievant was present in the vehicle, sprawled back toward the passenger side door and his feet hanging out the driver[']s side, attired in civilian clothes, apparently asleep or passed out, and unresponsive to Major Powers['] attempt to communicate with him. Major Powers was suspicious that the Grievant was likely intoxicated.

After observing Appellant, Major Powers went in search of Mr. Montgomery's supervisor, Sergeant Rick Theis. Upon locating Sgt. Theis, he informed him of the situation and further indicated he presumed that Appellant was intoxicated. When both Major Powers and Sgt. Theis inquired of Appellant whether he had been drinking, Mr. Montgomery "responded that he had been[,] but that he was okay." Appellant was escorted by Major Powers and Sgt. Theis to the South Charleston detachment building where a valid intoxilyzer test was administered to Mr. Montgomery. The results of this test indicated a blood alcohol level of .169%.[1]

Approximately an hour and half later, the decision was made to take Appellant into custody and administer a custodial intoxilyzer test as part of a criminal arrest. The arresting officer, Sergeant Seacrist, noted that Appellant "appeared to be drunk, that an odor of alcoholic beverage was on his breath, and that his eyes were bloodshot." The results of the second intoxilyzer test indicated a blood alcohol limit of .157%. Appellant was then charged with the criminal offense of operating a vehicle while under the

1. The statutory level for a *prima facie* finding of driving a motor vehicle while under the influence of alcohol was .10% at this time. *See* W.Va.Code § 17C–5–2(d)(1996) (Repl.Vol.2000).

influence of alcohol in violation of West Virginia Code § 17C–5–2(d) (1996) (Repl.Vol. 2000). After being found guilty by the magistrate court of the criminal offense of DUI, Appellant took an appeal to the circuit court. By order entered on February 3, 2000, the circuit court found Appellant not guilty of driving under the influence.[2]

The administrative proceeding involving Appellant's discharge began with the issuance of a "Superintendent's Notice of Intent to Discipline" on January 18, 1999, through which the State Police recommended that Appellant be discharged based on two separate grounds. The first charge identified in the notice was "conduct unbecoming a member of the West Virginia State Police," which cited Appellant's arrest for the crime of driving while under the influence of alcohol and using a State Police vehicle. The second charge relied upon to pursue administrative action against Appellant was "engaging in criminal conduct on or off the job" by "operat[ing] a motor vehicle while under the influence of alcohol, in violation of *W.Va.Code* § 17C–5–2 et seq." Based on both of the charges set forth in the Superintendent's Notice of Intent to Discipline, Appellant was

discharged from the State Police on February 16, 1999.

On May 17, 2000, an administrative hearing was held in connection with Appellant's discharge. By order entered on August 25, 2000, the hearing examiner determined it was improper to take disciplinary action against Appellant on the first charge which centered on an arrest in view of his subsequent acquittal of the offense,[3] but affirmed the dismissal based on the additional charge of engaging in criminal conduct on or off the job. Appellant appealed this decision to the circuit court, which affirmed the decision of the hearing examiner by ordered entered on March 21, 2003. Appellant seeks a reversal of the lower court's decision to uphold his termination.

## II. Standard of Review

In syllabus point one of *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996), we explained:

On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A–5–4(a)[4] and reviews questions

---

**2.** Because Appellant was not read his Miranda rights prior to the administering of the first intoxilyzer test, the circuit court found that this evidence was inadmissible and all evidence garnered by the State Police after the formal arrest was similarly inadmissible in the criminal proceeding under the fruit of the poisonous tree doctrine. *See State v. Davis*, 176 W.Va. 454, 461, 345 S.E.2d 549, 556 (1986) (citing *Wong Sun v. U.S.*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). Without this evidence, there was insufficient evidence to prove that Appellant was guilty of the offense of driving under the influence in the criminal proceeding. The circuit court also cited *Garrity v. State of New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), as "prohibit[ing] [the State] from using any evidence obtained during the administrative investigation" in a subsequent criminal proceeding. Because our ruling in this matter does not turn on whether these rulings were proper, we do not further address these rulings.

**3.** The hearing examiner explained:

It is not found as a general rule that any arrest would be automatically or necessarily moot upon acquittal, given the different standard of proof for criminal and civil matters, but the particular nature of the arrest of the Grievant [Appellant], it being directed by the headquarters of the WVSP in the course of the prelimi-

nary investigation of this matter by the WVSP, compels denial of use of that arrest for use against the Grievant after his acquittal of the charges brought. To permit use of that arrest by the WVSP despite the acquittal of the Grievant on those charges would permit the WVSP to create its own evidence by the mechanism of directing an arrest. If the arrest had been entirely independent of WVSP headquarters direction, such arrest might support administrative action, but not in this case in which the arrest was one directed by WVSP headquarters.

**4.** Under the provisions of West Virginia Code § 29A–5–4(g) (1998) (Repl.Vol.2002), reversal, vacation, or modification of an administrative decision is sanctioned when an individual's rights have been substantially prejudiced as a result of a ruling that is:

(1) In violation of constitutional or statutory provisions; or
(2) In excess of the statutory authority or jurisdiction of the agency; or
(3) Made upon unlawful procedures; or
(4) Affected by other error of law; or
(5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

of law presented *de novo;* findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong. *Id.* at 590, 474 S.E.2d at 520 (footnote supplied). Applying this standard to a lower court's decision to affirm an administrative decision, we held in syllabus point one of *Wheeling–Pittsburgh Steel Corp. v. Rowing,* 205 W.Va. 286, 517 S.E.2d 763 (1999): "Under the West Virginia Administrative Procedures Act, W.Va.Code ch. 29A, appellate review of a circuit court's affirmance of agency action is *de novo,* with any factual findings made by the lower court in connection with alleged procedural defects being reviewed under a clearly erroneous standard."

With these standards in mind, we proceed to determine whether the lower court committed error in upholding Appellant's discharge from the State Police.

### III. Discussion

Appellant argues that the Hearing Examiner wrongly determined that he could be discharged for violating a criminal statute for which he was later acquitted. Simply put, Appellant contends that because he was found not guilty of violating West Virginia Code § 17C–5–2 in the criminal proceeding, he cannot be discharged on the basis of violating that statute. Consequently, he maintains that it was error for the hearing examiner and the circuit court to uphold his discharge on the second of the two charges: engaging in criminal conduct on or off the job.

Appellant argues that the State Police had to show three things to sustain his discharge on the grounds of having engaged in the criminal conduct for which he is charged— operating a motor vehicle while under the influence of alcohol: (1) that the Appellant engaged in criminal conduct; (2) that the Appellant operated a motor vehicle while under the influence of alcohol; and (3) that the Appellant violated West Virginia Code § 17C–5–2. Based on his acquittal, Appellant argues that elements one and three cannot be shown and as to the second element, he asserts that the State Police failed to

introduce any affirmative evidence which demonstrated that he operated a motor vehicle while under the influence of alcohol.

■ In response to Appellant's protestations that he cannot be discharged in an administrative proceeding given the acquittal, the State Police cites this Court's decision in *Neely v. Mangum,* 183 W.Va. 393, 396 S.E.2d 160 (1990). We held in syllabus point two of *Mangum* that "[t]he dismissal of criminal charges that prompted initial disciplinary action against a public employee does not preclude a public official from administering further disciplinary action, including discharge." In explanation of this holding, we explained: "both the suspension and the discharge resulted from allegations of wrongdoing which sufficiently raised the issue of whether Mrs. Neely's continued employment would impair the all-important public image of an efficient and effective administration acting in the public's interest." *Id.* at 398, 396 S.E.2d at 165. We further recognized that "[a]s a public official whose primary duty is law enforcement, Sheriff Mangum had a right to demand that his employees be free of any question of impropriety or unlawful conduct, especially when the questioned conduct was work-related." *Id.* at 398, 396 S.E.2d at 165.

■ Just as the continued employment of an individual charged with wrongdoing in *Mangum* was determined to be a valid consideration notwithstanding the dismissal of criminal charges, the employment status of Appellant was analogously subject to this kind of appropriate scrutiny. Like the sheriff's office for whom Mrs. Neely was employed, the State Police has a legitimate interest in limiting employment to individuals who can uphold a high standard of conduct— a standard that clearly requires that employees report to work in a sober state and refrain from engaging in criminal conduct, on or off the job. Even Appellant admits that the State Police has the right to take administrative action against its employees on grounds of inappropriate conduct, which includes reporting to work in a drunken state.[5]

We are not persuaded by Appellant's argument that "where a not guilty finding is

---

**5.** Appellant admits that he could have been dis-

charged for coming to work in an inebriated

returned, an accused is exonerated from the crime that he was charged with [and] the taint of the initial allegation is effectively removed." In this case, the acquittal resulted from evidentiary difficulties,[6] rather than because Appellant was shown not to have committed the acts upon which the criminal offense was based. There are many reasons, including a higher burden of proof and stricter evidentiary rules,[7] that may affect whether a criminal defendant is convicted. For example, the heightened level of proof required in a criminal DUI proceeding accounts for many cases in which administrative action is taken against an individual without an accompanying criminal conviction. *See Jordan v. Roberts,* 161 W.Va. 750, 757–58, 246 S.E.2d 259, 263 (1978) (discussing differences between administrative and criminal DUI proceedings). Like the administrative action that is authorized for DUI offenses and may result in license suspension, the administrative action at issue in this case requires proof by a preponderance of the evidence and not the higher criminal standard of guilt beyond a reasonable doubt.

In this case, the Hearing Examiner found that the evidence demonstrated Appellant had violated this state's DUI laws for purposes of taking administrative action against him:

The Respondent West Virginia State Police did present reliable, probative and substantial evidence to establish by a preponderance of all the evidence that the Grievant [Appellant] did operate a WVSP cruiser under the influence of alcohol in violation of the provisions of *W.Va.Code* § 17C–5–2. The evidence presented established that the Grievant had been drinking the night before the morning of October 29, 1998, that he was present in an intoxicated condition, within the *prima facie* limits established by the provisions of

*W.Va.Code* § 17C–5–2(d), at or about 7:05 A.M. on October 29, 1998, in a WVSP cruiser assigned for his use while that vehicle was in a parking lot at WVSP headquarters, parked, with engine running, lights on, and the Grievant in the driver[']s seat. Although there is no observation of record that the Grievant was seen driving the said vehicle, all surrounding circumstances indicate, by a preponderance of the evidence, that the Grievant drove the said vehicle to locate it in the location in which it was found on October 29, 1998, the said circumstances indicating that the said vehicle could not otherwise be located at that location unless it was driven there by the Grievant. Syl. Pt. 3, *Carte v. Cline,* 200 W.Va. 162, 4[88] S.E.2d 437 (1997).

 With regard to the Hearing Examiner's application of *Carte* to the facts of this case, Appellant argues that the individual charged with drunk driving in that case admitted to driving the car.[8] Because Appellant did not admit to having driven the cruiser in which he was found passed out and because there were no eye witnesses to testify that they saw him actually driving the vehicle, he argues that our holding in *Carte* cannot be applied to the facts of this case. In syllabus points two and three of *Carte,* this Court held:

"Where there is evidence reflecting that a driver was operating a motor vehicle upon a public street or highway, exhibited symptoms of intoxication, and had consumed alcoholic beverages, this is sufficient proof under a preponderance of the evidence standard to warrant the administrative revocation of his driver's license for driving under the influence of alcohol." Syllabus Point 2, *Albrecht v. State,* 173 W.Va. 268, 314 S.E.2d 859 (1984).

---

state. *See* W.Va. R. *W.Va. State Police* § 81–10–11.3.3.3 (identifying as a Group III offense, the most serious category of disciplinary offense, the "report[ing] to work under the influence or when his or her ability was impaired by alcohol or a controlled substance"). He argues, however, that this was not the stated ground for his discharge. *See* W.Va.Code § 15–2–21 (1977) (Repl. Vol.2000) (requiring that written statement of charges be provided setting forth details pertinent to disciplinary action).

6. *See supra* note 2.

7. Under West Virginia Code § 15–2–6 (1993) (Repl.Vol.2000), the administrative proceedings involving the state police are "informal and without adherence to the technical rules of evidence required in proceedings in courts of record."

8. He also cites to the additional fact that in *Carte* the person charged with DUI was discovered with his foot on the accelerator.

W.Va.Code § 17C–5A–1a (a) (1994) does not require that a police officer actually see or observe a person move, drive, or operate a motor vehicle while the officer is physically present before the officer can charge that person with DUI under this statute, so long as all the surrounding circumstances indicate the vehicle could not otherwise be located where it is unless it was driven there by that person.

200 W.Va. at 163, 488 S.E.2d at 438.

▉ This Court's holding in *Carte* permits the use of circumstantial evidence to charge an individual with DUI. Appellant's contention that the prosecution must introduce "affirmative evidence" demonstrating that the individual charged with DUI actually operated the vehicle to invoke our holding in *Carte* is without merit. By adopting a standard that permits reliance upon circumstantial evidence to charge an individual with DUI, this Court implicitly approved prosecutions for the offense of driving while under the influence where affirmative proof as to the issue of driving while under the influence is absent. Moreover, as the State Police observes, Appellant failed to introduce any evidence to refute the circumstantial indication that he drove the car to the State Police headquarters before falling asleep in the vehicle, with the lights on and the engine still running.[9]

Based on the evidence presented, the Hearing Examiner concluded that the State Police had demonstrated by a preponderance of the evidence that Appellant had engaged in criminal conduct on or off the job. That criminal conduct involved the violation of West Virginia Code § 17C–5–2 by driving while under the influence of alcohol. We note that there is nothing in the regulations governing the discipline of police officers that requires an actual conviction for engaging in such criminal conduct. The administrative rule only requires a showing by a preponder-

ance of the evidence that the police officer "violated any law or engaged in criminal conduct on or off the job."[10] W.Va.R. *W.Va. State Police* § 81–10–11.3.3.19; *see also* Syl. Pt. 5, in part, *Mangum v. Lambert*, 183 W.Va. 184, 394 S.E.2d 879 (1990) (holding that "[s]eriously wrongful conduct by a civil service employee can lead to dismissal even if it is not a technical violation of any statute"). In this case, there was a showing by a preponderance of the evidence at the administrative level that Appellant did violate the provisions of West Virginia Code § 17C–5–2(d) by driving while under the influence of alcohol. Accordingly, the State Police made the proper showing for taking disciplinary action against Appellant which included the right to discharge him from its employ for commission of a Class III offense.[11]

Having reviewed the record in this matter in conjunction with the assignment of errors raised by Appellant we find no error and accordingly, the decision of the Circuit Court of Kanawha County is hereby affirmed.

Affirmed.

▉

---

**9.** The State Police suggests that had he in fact been driven to that location by another individual and left there to "sleep off" his drinking, Appellant could have introduced that evidence at the administrative hearing.

**10.** The regulation excludes from its reach violations of laws that qualify as Group I or II of-

fenses, the less serious offenses. By regulation, violations of the motor vehicle code falling under West Virginia Code § 17C–5–1 *et seq.* "shall be included as Group III offenses." W.Va.R. *W.Va. State Police* § 81–10–11.3.1.7.

**11.** *See supra* note 10.