685 S.E.2d 685

Randy D. BURGESS, Petitioner
Below, Appellant,

v.

Daniel W. MOORE, Sheriff, Raleigh
County, Respondent Below,
Appellee.

No. 34587.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 23, 2009.

Decided Oct. 9, 2009.

David S. Hart, Hayden & Hart, PLLC, Beckley, WV, for Appellant.

James R. Sheatsley, Gorman, Sheatsley & Co., L.C., Beckley, WV, for Appellee.

DAVIS, Justice:

The appellant herein and petitioner below, Corporal Randy D. Burgess (hereinafter "Corporal Burgess"),[1] appeals from an order entered March 21, 2008, by the Circuit Court of Raleigh County. By that order, the circuit court affirmed an earlier decision of the Raleigh County Deputy Sheriff Civil Service Commission (hereinafter "the Commission"). The Commission had upheld the disciplinary action taken against Corporal Burgess by his employer, the appellee herein and respondent below, the Sheriff of Raleigh County, Daniel W. Moore (hereinafter "Sheriff Moore"). Sheriff Moore had disciplined Corporal Burgess by demoting him to the rank of Deputy and reducing his pay in accordance with such demotion following (1) Corporal Burgess's negative reaction to his superiors' decision to refuse his request to take June 2, 2006, off from work as a vacation day and (2) his failure to report to work on June 2, 2006. On appeal to this Court, Corporal Burgess assigns as error (1) the failure to provide him with a predisciplinary hearing in violation of W. Va.Code § 7–14C–3 (1995) (Repl. Vol. 2006) after he had requested such a hearing and (2) the finding that his actions amounted to actionable misconduct and, if punishment was warranted, the failure to impose progressive, less punitive discipline.

---

**1.** Although the disciplinary sanctions imposed upon Mr. Burgess have reduced his rank from Corporal to Deputy, Mr. Burgess disputes the propriety of such sanctions in his appeal to this Court. Therefore, until we have determined whether such a reduction in rank was an appropriate punishment for the misconduct Mr. Burgess is alleged to have committed, we will refer to him by using the title he had at the time the events giving rise to the instant disciplinary proceeding occurred, *i.e.,* Corporal.

Upon a review of the parties' arguments, the record presented for appellate consideration, and the pertinent authorities, we find that it was error to deny Corporal Burgess a pre-disciplinary hearing after he had requested such a hearing and, accordingly, reverse the decision of the Raleigh County Circuit Court finding no such error had been committed. We further remand this case to the circuit court to afford Corporal Burgess a predisciplinary hearing.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The events giving rise to the instant proceeding are generally not disputed by the parties. Corporal Burgess works within the Court Security Division (hereinafter "the Division") of the Raleigh County Sheriff's Department. The Division provides security for the Raleigh County Courthouse and the Raleigh County Judicial Annex (hereinafter "Judicial Annex") and transports incarcerated individuals to and from court hearings. Captain Charles Darlington is the Division's supervisor; Lieutenant Mitchell "Skee" Barley (hereinafter "Lieutenant Barley") is next in command; and Sergeant James Byrd Miller (hereinafter "Sergeant Miller") reports directly to Lieutenant Barley. Sergeant Miller's job duties include processing vacation requests submitted by the Division's employees and preparing monthly work schedules for the Division. Lieutenant Barley oversees the approval and denial of employees' requests for time off from work.

Pursuant to administrative policies of the Raleigh County Sheriff's Department, which are observed by the Division, employees are required to submit requests for time off from work for vacation leave thirty days in advance of the requested day(s) off. Despite the existence of this policy, it is not rigidly enforced, and requests may be submitted less than thirty days before the requested day(s) off. In preparation of the Division's June 2006 work schedule, Sergeant Miller sent an e-mail message to Division employees asking them to submit their requests for days off during the month of June; such requests were required to be submitted by May 26, 2006. Pursuant to this e-mail, Corporal Burgess submitted a request for one holiday day off on June 2, 2006,[2] and ten vacation days off from June 5, 2006, through June 16, 2006. Because other employees had also requested June 2, 2006, off from work; because June 2, 2006, was not a holiday; and because several court hearings had been scheduled for June 2, 2006, Corporal Burgess's request for June 2, 2006, off from work was denied. However, Corporal Burgess's request to use vacation days from June 5, 2006, through June 16, 2006, was approved. The parties dispute when Corporal Burgess received the paperwork indicating the partial approval and partial denial of his leave request and also disagree as to when Corporal Burgess received the Division's June 2006 work schedule, which Sergeant Miller e-mailed to Division employees on May 30, 2006.

On June 1, 2006, Corporal Burgess's assigned post was at the doors of the Judicial Annex; because his request for vacation leave had not been granted, Corporal Burgess was also assigned to this post on June 2, 2006. During the afternoon of June 1st, Sergeant Miller passed through the doors where Corporal Burgess was posted; upon seeing Corporal Burgess, Sergeant Miller reminded him to be on time for work on June 2nd because several court hearings were scheduled for that day. Corporal Burgess responded that he was not working on June 2nd because he had requested that day off, indicating that he had not received notice that his request for that day off from work had been denied and further suggesting that he had not yet seen the June 2006 work schedule that had listed him as working on that day. Sergeant Miller directed Corporal Burgess to report for work on June 2nd, and Corporal Burgess reiterated that he did not plan to report to work that day. The conversation between Corporal Burgess and Sergeant Miller became somewhat heated, and, during this exchange, Corporal Burgess used

---

**2.** It is not clear why Corporal Burgess requested holiday time off on June 2, 2006, insofar as June 2, 2006, was neither a state holiday nor a legal holiday.

profanity. Corporal Burgess later explained that the use of profanity was common among Division employees and particularly in speaking with Sergeant Miller with whom he had been friends since childhood. Other Division employees who witnessed this interaction reported that they did not know whether members of the public had, in fact, overheard the conversation, and that they felt that Corporal Burgess had been disrespectful of and insubordinate to Sergeant Miller.

Following this exchange, Sergeant Miller called Lieutenant Barley who, in turn, called Corporal Burgess. During this conversation, Lieutenant Barley directed Corporal Burgess to report to work on June 2nd to which Corporal Burgess again stated that he did not plan to report to work that day and would, if not granted vacation time off, use sick leave instead. Approximately one-half hour after his shift ended on June 1st, Corporal Burgess called in sick in anticipation of his absence from work on June 2nd. Corporal Burgess claims that he needed to be off from work on June 2nd in order to take his pregnant wife to a doctor's appointment in Charleston, West Virginia; it does not appear, though, that Corporal Burgess ever communicated this fact to either Sergeant Miller or to Lieutenant Barley when he spoke with them on June 1st or when he later called in sick in anticipation of his June 2nd absence from work.

As a result of the manner in which Corporal Burgess communicated with Sergeant Miller and Lieutenant Barley on June 1, 2006, and in light of Corporal Burgess's failure to report for work on June 2, 2006, Lieutenant Barley, on June 7, 2006, filed a formal complaint with Sheriff Moore charging Corporal Burgess with "gross insubordination" and "conduct unbecoming of an officer and member of the department." Following the filing of the complaint, Sheriff Moore met with Corporal Burgess on June 19, 2006, at which time, Corporal Burgess claims to have requested a predisciplinary hearing. After this meeting, an internal investigation was conducted, which substantiated Corporal Burgess's misconduct. As a result of the investigation, Sheriff Moore, by letter dated August 3,

2006, demoted Corporal Burgess to the rank of Deputy and reduced his pay in accordance with such demotion. Thereafter, on August 10, 2006, Corporal Burgess filed an answer and objection to his discipline with the Raleigh County Deputy Sheriff Civil Service Commission (Commission). Following its September 19, 2006, hearing, the Commission issued an order upholding the discipline imposed by Sheriff Moore.

Corporal Burgess then appealed the Commission's decision to the Circuit Court of Raleigh County. By order entered March 21, 2008, the circuit court also affirmed the disciplinary action taken against Corporal Burgess. It is from this adverse decision that Corporal Burgess appeals to this Court.

## II.

### STANDARD OF REVIEW

On appeal to this Court, Corporal Burgess asks us to review a decision of the Circuit Court of Raleigh County that, in turn, affirmed a decision rendered by the Raleigh County Deputy Sheriff Civil Service Commission. We previously have held that "[a] final order of a deputy sheriffs' civil service commission, based upon findings not supported by the evidence, upon findings contrary to the evidence, or upon a mistake of law, will be reversed and set aside by this Court upon review." Syl. pt. 1, *Mangum v. Lambert*, 183 W.Va. 184, 394 S.E.2d 879 (1990). Furthermore,

[a]n appellate court may reverse a decision of the Civil Service Commission for Deputy Sheriffs, W. Va.Code § 7–14–1 (1991), *et seq.*, as clearly wrong or arbitrary or capricious only if the Commission used a misapplication of the law, entirely failed to consider an important aspect of the problem, offered an explanation that ran counter to the evidence before the Commission, or offered an explanation that was so implausible that it could not be ascribed to a difference in view or the product of Commission expertise.

Syl. pt. 3, *Messer v. Hannah*, 222 W.Va. 553, 668 S.E.2d 182 (2008). Our review of the issues in the case *sub judice* will be governed by these standards.

## III.

## DISCUSSION

Corporal Burgess assigns two errors in his appeal to this Court: (1) he was denied a predisciplinary hearing in violation of W. Va. Code § 7–14C–3 (1995) (Repl. Vol. 2006) after he had requested such a hearing and (2) his actions did not amount to actionable misconduct and, if they did, he was entitled to progressive, less punitive discipline.

### A. Predisciplinary Hearing

For his first assignment of error, Corporal Burgess contends that both the Commission and the circuit court erred by upholding the Sheriff's decision to discipline him when he was not afforded a predisciplinary hearing, as required by W. Va.Code § 7–14C–3, after he had requested such a hearing. In its order following its September 19, 2006, hearing, the Commission concluded that Corporal Burgess was not entitled to a predisciplinary hearing before a hearing board because discipline of the enumerated types, *i.e.*, reduction in rank and pay, had been taken against him, *citing* W. Va.Code § 7–14C–3(b), and, thus, he was entitled only to a hearing before the Commission. The Commission further explained that

> [t]he provisions of law providing for a hearing before a hearing board also provide that either the aggrieved deputy or the sheriff may appeal the ruling of the hearing board to the Deputy Sheriff Civil Service Commission *West Virginia Revised Code § 7–14C–5*. It is therefore clear that the intention of the statute is to provide immediate access to a deputy against whom the punitive action is discharge, suspension or reduction in rank or pay rather than forcing the aggrieved deputy to go through the preliminary process of a hearing before the hearing board. Effectively the intention of the statute is to provide an opportunity for prompt hearing before the administrative panel i.e. the Deputy Sheriff Civil Service Commission directly and such provision of law is designed to protect the interests of the deputy sheriffs.

Similarly, the circuit court, by order entered March 21, 2008, observed that

> [Corporal] Burgess contends that Sheriff Moore did not grant his request for a hearing board [hearing] as contemplated under West Virginia Code Section 7–14C–3. . . .
>
> In the present case, the [Corporal] was notified of the results of the investigation and of the proposed action by the Sheriff and the [Corporal] was given, according to the record, appropriate opportunity to reply to the Sheriff's findings and then he subsequently demanded a review. That review was done before the Raleigh County Deputy Sheriff Civil Service Commission and was conducted under West Virginia Code Section 7–14–17.
>
> The Court **FINDS** in this matter that the Department conducted an adequate predetermination hearing, granting unto the officer the right to respond to the Sheriff's findings and proposed action. The Court further FINDS that that process essentially granted to Deputy Burgess the rights which he claims under West Virginia Code Section 7–14[C]–3 and that the procedure used by the Sheriff of Raleigh County in this procedure was in fact constitutionally adequate.

(Emphasis in original).

Before this Court, Corporal Burgess contends that although he requested a predisciplinary hearing when he met with Sheriff Moore, no such hearing was provided before he was demoted to the rank of Deputy. Because Sheriff Moore failed to comply with the statutory procedures in this regard, *i.e.*, W. Va.Code § 7–14C–3 (1995) (Repl. Vol. 2006), Corporal Burgess argues that the Sheriff's disciplinary actions are void and he should be reinstated to the rank of Corporal. Corporal Burgess concedes that immediate disciplinary action may be taken under W. Va.Code § 7–14C–2(e) (1995) (Repl. Vol. 2006) if a deputy reports for work while under the influence of alcohol, a controlled substance, or a mental or emotional disorder, but that this statute does not apply to the facts of this case. Rather, Corporal Burgess suggests that W. Va.Code § 7–14C–3(b) requires that he be provided the predisciplinary hearing he requested:

The hearing shall be conducted by the hearing board of the deputy sheriff except that in the event the recommended punitive action is discharge, suspension or reduction in rank or pay, and the action has been taken, the hearing shall be pursuant to the provisions of section seventeen, article fourteen of this chapter, if applicable. Both the sheriff and the deputy sheriff shall be given ample opportunity to present evidence and argument with respect to the issues involved.

Corporal Burgess further urges the Court to adopt the reasoning it used in reviewing an analogous statutory provision in *Alden v. Harpers Ferry Police Civil Service Commission*, 209 W.Va. 83, 543 S.E.2d 364 (2001):

W. Va.Code § 8–14A–3(b) (1997) (Repl. Vol. 1998) requires that, before a civil service officer may be disciplined through discharge, suspension, or reduction in rank or pay, he/she must be afforded a predisciplinary hearing before a hearing board unless there exist exigent circumstances that require the recommended disciplinary action to precede such hearing. To the extent our prior decision in the Syllabus of *City of Huntington v. Black*, 187 W.Va. 675, 421 S.E.2d 58 (1992), is inconsistent with this holding, it is hereby expressly modified.

Syl. pt. 4, *Alden*, 209 W.Va. 83, 543 S.E.2d 364.

Sheriff Moore responds that W. Va.Code § 7–14C–3(b) authorizes him to discipline deputy sheriffs without first affording them a predisciplinary hearing. This section specifically directs that if "the recommended punitive action is ... reduction in rank or pay, and the action has been taken," the hearing should be conducted in accordance with W. Va.Code § 7–14–17 (1996) (Repl. Vol. 2006). Sheriff Moore further represents that W. Va.Code § 7–14–17 requires that a written statement of the reasons for the disciplinary action be provided to the aggrieved deputy and that a hearing before the civil service commission be provided, if such a hearing is requested. In this case, Sheriff Moore states that he provided Corporal Burgess with a written statement of the reasons for his disciplinary actions and that Corporal Burgess had the hearing before the Deputy Sheriff Civil Service Commission that he had requested.

With respect to W. Va.Code § 7–14C–3(b), Sheriff Moore suggests that the exception language contained therein should be construed as excepting from the predisciplinary hearing requirements those cases, such as the instant proceeding, that involve designated types of disciplinary actions such as the "reduction in rank or pay" imposed upon Corporal Burgess.[3]

At issue in this case is the meaning of the statutory language set forth in W. Va.Code § 7–14C–3 (1995) (Repl. Vol. 2006) and whether this statute requires a predisciplinary hearing be afforded to a deputy sheriff who requests such a hearing. In full, this section provides

(a) If the investigation or interrogation of a deputy sheriff results in the recommendation of some punitive action, then, before taking punitive action the sheriff shall give notice to the deputy sheriff that he or she is entitled to a hearing on the issues by a hearing board. The notice shall state the time and place of the hearing and the issues involved and be delivered to the deputy sheriff not less than ten days prior to the hearing. An official record, including testimony and exhibits, shall be kept of the hearing.

(b) The hearing shall be conducted by the hearing board of the deputy sheriff except that in the event the recommended punitive action is discharge, suspension or reduction in rank or pay, and the action has been taken, the hearing shall be pursuant to the provisions of section seventeen

---

3. Sheriff Moore also relies upon this Court's prior decision in *Johnson v. Ashley*, 190 W.Va. 678, 681 n. 3, 441 S.E.2d 399, 402 n. 3 (1994) (per curiam), wherein we determined that a pretermination *hearing* had been conducted when a deputy sheriff was called into a pretermination *meeting* and had been given the opportunity to respond to the charges against him. Insofar as

the *Johnson* case was decided in 1994, approximately one year before the statute at issue herein which specifically addresses predisciplinary hearings, W. Va.Code § 7–14C–3, was enacted in 1995, we are not persuaded by the language of *Johnson*, which was neither based upon nor decided under the statutory language applicable to the case *sub judice*.

[§ 7–14–17], article fourteen of this chapter, if applicable. Both the sheriff and the deputy sheriff shall be given ample opportunity to present evidence and argument with respect to the issues involved.

(c) With respect to the subject of any investigation or hearing conducted pursuant to this section, the hearing board may subpoena witnesses and administer oaths or affirmations and examine any individual under oath and may require and compel the production of records, books, papers, contracts and other documents.

(d) Any decision, order or action taken as a result of the hearing shall be in writing and shall be accompanied by findings of fact. The findings shall consist of a concise statement upon each issue in the case. A copy of the decision or order and accompanying findings and conclusions, along with written recommendations for action, shall be delivered or mailed promptly to the deputy sheriff or to his or her attorney of record.

W. Va.Code § 7–14C–3. To summarize the parties' interpretations of this statutory language, Corporal Burgess suggests that subsection (b) requires a predisciplinary hearing except when immediate disciplinary action is permitted to be taken in accordance with W. Va.Code § 7–14C–2(e), while Sheriff Moore contends that a predisciplinary hearing is not required when the disciplinary action is one of the types enumerated in subsection (b). Our review of the relevant statutory language, however, leads us to reject both of these interpretations and to rely, instead, upon the statutory language as it is clearly written.

■ Our determination of the meaning of statutory language requires us first to consider the legislative intent underlying the statutory enactment at issue: "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syllabus point 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). In ascertaining such legislative intent, we consider the precise words used by the Legislature. "A statutory

provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951). *Accord* Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W.Va. 137, 107 S.E.2d 353 (1959) ("When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute."). However, "[a] statute that is ambiguous must be construed before it can be applied." Syl. pt. 1, *Farley v. Buckalew*, 186 W.Va. 693, 414 S.E.2d 454 (1992). *Accord* Syl. pt. 1, *Ohio County Comm'n v. Manchin*, 171 W.Va. 552, 301 S.E.2d 183 (1983) ("Judicial interpretation of a statute is warranted only if the statute is ambiguous and the initial step in such interpretative inquiry is to ascertain the legislative intent.").

■ The statutory language at issue herein, W. Va.Code § 7–14C–3, is plain and clearly requires that a deputy sheriff facing discipline receive notice of his/her entitlement to a predisciplinary hearing, W. Va.Code § 7–14C–3(a), and that such a hearing be provided unless one of the specified disciplinary actions has already been taken against the deputy sheriff facing discipline, W. Va.Code § 7–14C–3(b). Specifically, in subsection (a), the Legislature explicitly states, in relevant part, that "[i]f the investigation or interrogation of a deputy sheriff results in the recommendation of some punitive action, then, *before taking punitive action* the sheriff shall give notice to the deputy sheriff that he or she is entitled to a hearing on the issues by a hearing board." W. Va.Code § 7–14C–3(a) (emphasis added). This language plainly contemplates a separate and distinct predisciplinary hearing, before a hearing board, "before ... punitive action" is taken. *Id.* Based upon this plain language, we hold that W. Va.Code § 7–14C–3(a) (1995) (Repl. Vol. 2006) requires a sheriff to notify a deputy sheriff facing discipline of his/her entitlement to a hearing on the issues giving rise to such

discipline "before ... punitive action" is taken.[4]

■ Subsection (b) then addresses the manner in which such predisciplinary hearing is to be conducted. In pertinent part, W. Va.Code § 7–14C–3(b) provides:

■ The hearing shall be conducted by the hearing board of the deputy sheriff [2] except that in the event the recommended punitive action is discharge, suspension or reduction in rank or pay, *and the action has been taken,* the hearing shall be pursuant to the provisions of section seventeen [§ 7–14–17], article fourteen of this chapter, if applicable.

(Bracketed numbers and emphasis added). This statutory language plainly envisions two types of hearings: (1) predisciplinary hearings that occur *before* disciplinary action has been taken, which hearings are conducted before a hearing board, and (2) hearings that occur *after* certain types of disciplinary action have been taken, which hearings are conducted in accordance with the provisions of W. Va.Code § 7–14–17 (1996) (Repl. Vol. 2006). Pursuant to this plain language, we therefore hold that W. Va.Code § 7–14C–3 (1995) (Repl. Vol. 2006) contemplates two distinct types of hearings. The first type of hearing, which is governed by W. Va.Code §§ 7–14C–3(a & b), is a predisciplinary hearing, which is conducted before disciplinary action has been taken and is held before a hearing board. Alternatively, the second type of hearing, which is governed by W. Va.Code § 7–14C–3(b), is conducted after disciplinary action in the form of "discharge, suspension or reduction in rank or pay" has been taken and is held in accordance with the provisions of W. Va.Code § 7–14–17 (1996) (Repl. Vol. 2006).[5]

■ Under the facts of the case *sub judice,* it is unclear whether Sheriff Moore notified Corporal Burgess of his right to a predisciplinary hearing as required by W. Va. Code § 7–14C–3(a). Nevertheless, Corporal Burgess testified before the Commission that he had requested a predisciplinary hearing during his initial meeting with Sheriff Moore, on June 19, 2006, and that no predisciplinary hearing was afforded to him before he received Sheriff Moore's letter dated August 3, 2006, disciplining him by reducing his rank and pay. Although Sheriff Moore disputes Corporal Burgess's claim that he requested a predisciplinary hearing, Sheriff Moore has not presented any evidence to refute Corporal Burgess's testimony. Moreover, the parties do not dispute the fact that Corporal Burgess was not afforded a predisciplinary hearing. Insofar as Corporal Burgess requested a predisciplinary hearing during his meeting with Sheriff Moore nearly two months *before* punitive action was taken against him and he was not afforded a predisciplinary hearing, Corporal Burgess has been denied his right to receive a predisciplinary hearing in violation of the provisions of W. Va.Code § 7–14C–3. Thus, to the extent that both the Circuit Court of Raleigh County and the Raleigh County Deputy Sheriff Civil Service Commission concluded that Corporal Burgess had been afforded the predisciplinary hearing he had requested, such "findings [are] not supported by the evidence," Syl. pt. 1, in part, *Mangum v. Lambert,* 183 W.Va. 184, 394 S.E.2d 879, but, rather, such "findings [are] contrary to the evidence," *id.* Accordingly, we reverse the orders of both the circuit court and the Com-

---

**4.** *See* note 5, *infra.*

**5.** While the plain language of the subject statute leads to the holdings obtained in this case, we note that our decision herein is consistent also with our prior decision in *Alden v. Harpers Ferry Police Civil Service Commission,* 209 W.Va. 83, 543 S.E.2d 364 (2001), wherein we reviewed a substantially similar statutory provision that requires a predisciplinary hearing be afforded to a civil service officer facing certain types of disciplinary actions. *See* Syl. pt. 4, *Alden,* 209 W.Va. 83, 543 S.E.2d 364 ("W. Va.Code § 8–14A–3(b)

(1997) (Repl. Vol. 1998) requires that, before a civil service officer may be disciplined through discharge, suspension, or reduction in rank or pay, he/she must be afforded a predisciplinary hearing before a hearing board unless there exist exigent circumstances that require the recommended disciplinary action to precede such hearing. To the extent our prior decision in the Syllabus of *City of Huntington v. Black,* 187 W.Va. 675, 421 S.E.2d 58 (1992), is inconsistent with this holding, it is hereby expressly modified.").

mission finding that Corporal Burgess received an adequate predisciplinary hearing, and we further remand this case so that the predisciplinary hearing requested by Corporal Burgess may be conducted. As we cautioned in *Alden*, 209 W.Va. at 88, 543 S.E.2d at 369, this opinion is not deciding whether Corporal Burgess committed the misconduct with which he has been charged nor are we determining the propriety of the discipline imposed upon Corporal Burgess therefor. Rather, we simply are remanding this case to afford Corporal Burgess the predisciplinary hearing that W. Va.Code § 7–14C–3 entitles him to receive.

### B. *Nature of Misconduct and Resultant Discipline*

Based upon our resolution of Corporal Burgess's first assignment of error relating to the failure to afford him a predisciplinary hearing, our reversal of the orders upholding the disciplinary actions taken against him, and our remand of this case for the conduction of a predisciplinary hearing, it would be premature for us to consider Corporal Burgess's second assignment of error regarding the nature of the misconduct with which he has been charged and the discipline resulting therefrom. *See* Section III.A., *supra*.

### IV.

### CONCLUSION

For the foregoing reasons, the March 21, 2008, order of the Circuit Court of Raleigh County is hereby reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.