No. 16-0840 - Robert Matheny, Sheriff of Harrison County v. Lieutenant Gregory Scolapio

**FILED**

**November 9, 2017**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LOUGHRY, Chief Justice, concurring:

        I concur with the majority's decision to affirm the circuit court's order finding that the Sheriff was an interested party entitled to intervene in the proceedings below and that Lieutenant Scolapio should have been afforded a de novo hearing before the Harrison County Civil Service Commission for Deputy Sheriffs. I write separately because the majority decision misconstrues *Burgess v. Moore*, 224 W.Va. 291, 685 S.E.2d 685 (2009), and ignores the plain language of West Virginia Code § 7-14C-3(b) (2015), resulting in a failure to recognize that certain instances of misconduct can be so egregious that immediate punitive action must be taken. In those circumstances, a pre-disciplinary hearing is not required.

        The majority opinion erroneously states, albeit in dicta, that a deputy sheriff facing disciplinary action is always entitled to a hearing before the hearing board[1] *and* a hearing before the deputy sheriffs civil service commission.[2] Maj. Op. at 13. However, West

---

[1] "'Hearing board' means a board which is authorized by the sheriff to hold a hearing on a complaint against a deputy sheriff and which consists of three members, all to be selected from deputy sheriffs within that agency, or law-enforcement officers or firefighters of another agency with the approval of the sheriff and who have had no part of the investigation or interrogation of the deputy sheriff under investigation." W.Va. Code § 7-14C-1(4) (2015).

[2] *See* W.Va. Code § 7-14-3 (2015) (establishing civil service commission for deputy sheriffs in each county); W.Va. Code § 7-14-6 (2015) (setting forth powers and duties of

1

Virginia Code § 7-14C-3(b) clearly provides that when discipline, *i.e.*, punitive action,[3] has already been imposed in the form of "discharge, suspension, or reduction in rank or pay" following an instance of misconduct, the only hearing afforded is a hearing before the deputy sheriffs civil service commission. In that regard, West Virginia Code § 7-14C-3 states, in pertinent part:

> (a) *If the investigation or interrogation of a deputy sheriff results in the recommendation of some punitive action, then,* **before taking punitive action** *the sheriff shall give notice to the deputy sheriff that he or she is* **entitled to a hearing on the issues by a hearing board.** The notice shall state the time and place of the hearing and the issues involved and be delivered to the deputy sheriff not less than ten days prior to the hearing. An official record, including testimony and exhibits, shall be kept of the hearing.
>
> (b) *The hearing shall be conducted by the hearing board of the deputy sheriff except that* **in the event the recommended punitive action is discharge, suspension or reduction in rank or pay, and the action has been taken, the hearing shall be pursuant to the provisions of section seventeen** [§ 7-14-17], ***article fourteen of this chapter,*** if applicable. Both the sheriff and the deputy sheriff shall be given ample opportunity to present evidence and argument with respect to the issues involved.

(Emphasis added). The only hearing provided for in West Virginia Code § 7-14C-3(b) is to be conducted by the deputy sheriffs civil service commission under West Virginia Code §

deputy sheriffs civil service commission).

[3]The statutes use the term "punitive action" which is defined as "any action which may lead to dismissal, demotion, suspension, reduction in salary, written reprimand or transfer for purposes of punishment." W.Va. Code § 7-14C-1(3).

7-14-17, which provides, in relevant part: "If the deputy demands it, the civil service commission shall grant a public hearing . . . . At the hearing, the burden shall be upon the sheriff to justify his or her action[.]"

In *Burgess,* we examined these statutory provisions and considered whether a deputy sheriff had a right to a pre-disciplinary hearing. In that case, the events that led to disciplinary action began when Randy Burgess, a deputy sheriff who provided security in the county courthouse, submitted a request to his supervisor to take June 2, 2006, as a vacation day. *Burgess*, 224 W.Va. at 293, 685 S.E.2d at 687. His request was denied because several other employees had requested the same leave and multiple court hearings were scheduled for that day. *Id.* Upon learning that his request had been denied, Burgess had a verbal, heated exchange with his supervisor, during which he used profanity and indicated that he was not going to report to work on June 2. *Id.* Burgess called in sick and did not report for work on June 2. *Id.* at 294, 685 S.E.2d at 688. Thereafter, his supervisor filed a formal complaint with the sheriff charging Burgess with "gross insubordination" and "conduct unbecoming of an officer and member of the department." *Id.* According to Burgess, when he met with the sheriff about the complaint, he requested a pre-disciplinary hearing. However, no such hearing was held and, following a two-month investigation, Burgess was demoted causing him to receive a reduction in pay. *Id.* Burgess filed an objection to the discipline with the deputy sheriffs civil service commission. The commission then held a

3

hearing and ultimately upheld the demotion as did the circuit court. Upon appeal to this

Court, Burgess asserted error because he had been denied a pre-disciplinary hearing.

In determining whether Burgess was entitled to a pre-disciplinary hearing, this

Court undertook an in-depth analysis of West Virginia Code § 7-14C-3. We concluded that

"[West Virginia] Code § 7-14C-3(a) . . . requires a sheriff to notify a deputy sheriff facing

discipline of his/her entitlement to a hearing on the issues giving rise to such discipline

'before . . . punitive action' is taken,"[4] and "that such a hearing [must] be provided *unless one*

*of the specified disciplinary actions has already been taken against the deputy sheriff facing*

*discipline*[.]" 224 W.Va. at 297, 685 S.E.2d at 691 (emphasis added). With regard to West

Virginia Code § 7-14C-3(b), we explained:

> This statutory language plainly envisions two types of
> hearings: (1) predisciplinary hearings that occur before
> disciplinary action has been taken, which hearings are conducted
> before a hearing board, and (2) hearings that occur *after* certain
> types of disciplinary action have been taken, which hearings are
> conducted in accordance with the provisions of W. Va. Code §
> 7-14-17 (1996) (Repl. Vol. 2006). Pursuant to this plain
> language, we therefore hold that W.Va. Code § 7-14C-3 (1995)
> (Repl. Vol. 2006) contemplates two distinct types of hearings.
> The first type of hearing, which is governed by W. Va. Code §§
> 7-14C-3(a & b), is a predisciplinary hearing, which is conducted
> before disciplinary action has been taken and is held before a
> hearing board. Alternatively, the second type of hearing, which
> is governed by W. Va. Code § 7-14C-3(b), is conducted after
> disciplinary action in the form of "discharge, suspension or

---

[4]224 W.Va. at 292, 685 S.E.2d at 686, syl. pt. 5.

reduction in rank or pay" has been taken and is held in accordance with the provisions of W. Va. Code § 7-14-17 (1996) (Repl. Vol. 2006).

224 W.Va. at 298, 685 S.E.2d 692. We concluded that Burgess should have been afforded a pre-disciplinary hearing as he requested because the punitive action was not imposed until two months after he was given notice that he was under investigation.

Unlike Burgess who was disciplined two months after he was given notice that he was under investigation, Lieutenant Scolapio was notified by letter eight days after the alleged misconduct that he was suspended with pay and the Sheriff was seeking his termination. Although Lieutenant Scolapio was afforded a pre-disciplinary hearing, such a hearing was not required under West Virginia Code § 7-14C-3(b) because one of the specified punitive actions had been taken. Specifically, Lieutenant Scolapio was suspended and, under those circumstances, West Virginia Code § 7-14C-3(b) mandates that a hearing shall be conducted pursuant to West Virginia Code § 7-14-17. In other words, the suspension triggered the right to a hearing before the deputy sheriffs civil service commission but not a pre-disciplinary hearing before the hearing board.

The majority's statement that a deputy sheriff facing disciplinary action is entitled to both a hearing before the hearing board *and* a hearing before the deputy sheriffs civil service commission is contrary to the plain language of the statute and *Burgess*. West

5

Virginia Code § 7-14C-3(b) does not mandate a pre-disciplinary hearing when punitive action has already been taken and neither does common sense. Indeed, it defies logic to conclude that a deputy sheriff who has already been disciplined is nonetheless entitled to a "pre-disciplinary" hearing. Certainly, deputy sheriffs are entitled to due process when they are subject to punitive action, especially when the end result may be the loss of employment. However, the statute, as written, does not require a pre-disciplinary hearing in all instances "before" punitive action is imposed. If the Legislature intended to afford deputy sheriffs facing punitive action with two hearings–a pre-disciplinary hearing before the hearing board and a post-disciplinary hearing before the deputy sheriffs civil service commission–then the governing statutes should be amended to make such intent plain and unambiguous. "It is not for this Court arbitrarily to read into a statute that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." Syl. Pt. 11, *Brooke B. v. Ray C., II*, 230 W.Va. 355, 738 S.E.2d 21 (2013).

Accordingly, for the reasons set forth above, I concur with the majority's decision in this case.