**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

SONYA PORTER,
Sheriff of Logan County, West Virginia,
Petitioner

**FILED**

**November 13, 2019**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

vs) **18-0729** (Logan County No. 13-C-165)

JAMES H. BROWN, III,
Respondent

### MEMORANDUM DECISION

Petitioner Sonya Porter, Sheriff of Logan County ("Sheriff Porter"), appeals the July 26, 2018, order of the Circuit Court of Logan County. The circuit court ordered Sheriff Porter to pay Respondent James H. Brown, III ("Deputy Brown") $8,136 in attorney's fees, plus $44.22 in costs pursuant to a mandamus action Deputy Brown filed seeking to compel Sheriff Porter to pursue and conclude an internal investigation into allegations of misconduct against him. On appeal,[1] Sheriff Porter asserts that the circuit court erred in its analysis of our statute addressing the procedure for investigating a deputy sheriff, W. Va. Code § 7-14C-1 *et seq.* (1995). Further, Sheriff Porter argues that the circuit court lacked subject matter jurisdiction over this matter and, therefore, did not have the authority to award attorney's fees to Deputy Brown.

After review and for the reasons stated herein, we affirm the circuit court's order. Because we find no substantial question of law and no prejudicial error, a memorandum decision affirming the circuit court's order is appropriate under Rule 21(c) of the Rules of Appellate Procedure.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On November 9, 2012, Sheriff W. E. Hunter gave Deputy Brown a written "Notice of Internal Investigation" ("Notice"). It provided

> an Internal Investigation has been ordered by the Sheriff in
> various allegation [sic] of misconduct made against you. The
> Investigation is in the early stages and a complete description

---

[1] Sheriff Porter is represented by John R. Teare, Jr. Deputy Brown is represented by George L. Partain and Erica Barker Cook.

1

of the potential violations is not possible at this time.[2] To the extent the Internal Investigation results in any recommendation for punitive action, specific allegations will be provided to you and you will be entitled to a hearing prior to any discipline more serious than counseling.

You are further informed that the Investigation will be conducted by Cpl. F. N. Ferrell who will report directly to me. This Investigation could lead to punitive action up to and including termination of employment. As such, the Investigation will be conducted pursuant to West Virginia Code 7-14C-1 through 5. You have the right to retain legal counsel to represent you at your expense should you desire.

Additionally, the Notice provided that Deputy Brown was placed on "paid administrative leave during the pendency of this investigation and until further notice." The Notice set forth the following conditions Deputy Brown was required to follow during his "paid administrative leave": 1) attend all scheduled court dates, 2) obey all rules and regulations of the sheriff's department, 3) remain at his place of residence from 8:30 a.m. until 4:30 p.m. Monday through Friday unless another location is authorized, 4) respond to phone calls from the sheriff's office, 5) be reasonably available for investigative purposes, 6) "any secondary employment previously approved is no longer approved," 7) "surrender all the assigned equipment, uniforms, keys, etc." in his possession, and 8) do not exercise any authority of the sheriff's department or engage in any law enforcement activities. Regarding the sixth condition, Deputy Brown had secondary employment that he was forced to quit as a result of being placed on "paid administrative leave." *See* W. Va. Code § 7-14-15a (allowing deputy sheriffs to engage in paid police work in addition to their regular work as a deputy).

Finally, the Notice provided that Corporal Ferrell "*will contact you in the near future* to schedule all necessary interviews." (Emphasis added). Aside from informing Deputy Brown that he would be contacted in the "near future," the Notice did not provide any timeframe addressing how long he would remain on "paid administrative leave."

On January 1, 2013, Sonya Porter, the newly elected Sheriff, took office. Corporal Ferrell completed his investigation near the end of January 2013 and submitted a report to Sheriff Porter. Despite the Notice's statement that Corporal Ferrell "will contact you in the near future," Deputy Brown was not contacted during the course of Corporal

---

[2] Sheriff Porter's brief to this Court provided that Deputy Brown did not ask why he was being investigated. However, during oral argument, counsel for Sheriff Porter informed the Court that Deputy Brown did ask why he was being placed on leave upon receiving the Notice. The Sheriff did not provide a specific reason to Deputy Brown.

Ferrell's investigation, nor was he interviewed prior to Corporal Ferrell completing his report. No explanation was provided to Deputy Brown as to why Corporal Ferrell completed his investigation without interviewing him.

On April 26, 2013, Deputy Brown filed a petition for reinstatement with the Logan County Deputy Sheriffs' Civil Service Commission ("Commission"). In the petition, Deputy Brown asserted that he had, in effect, been suspended or removed pursuant to the Notice in November 2012. The petition provided that "[m]ore than five months have passed and . . . [Deputy Brown] has never been provided with a written statement of the reasons for the Sherriff's actions." Deputy Brown requested that the Commission convene, hold a hearing, and direct Sheriff Porter to reinstate him.

On May 3, 2013, Sheriff Porter filed a response in opposition to Deputy Brown's petition. Sheriff Porter argued that the Commission lacked the authority to reinstate Deputy Brown because he had not been disciplined, rather, he was on paid administrative leave during an active internal investigation of misconduct. On May 8, 2013, Deputy Brown filed a reply with the Commission and made a second request for it to hold a hearing. On May 23, 2013, Deputy Brown made a third request for the Commission to hold a hearing and stated that if it failed to do so, he would seek a writ of mandamus before the circuit court in order to compel the hearing. The Commission did not schedule a hearing.

On June 27, 2013, approximately eight months after being placed on indefinite "paid administrative leave," Deputy Brown filed a civil action seeking mandamus relief to compel: 1) the Commission to convene and hold a public hearing on his petition for reinstatement; and 2) Sheriff Porter to pursue and conclude the internal investigation. Deputy Brown requested attorney's fees and costs. The circuit court held a hearing and, by order entered on August 26, 2013, determined that "commissioners need to be appointed to the . . . Commission before the [c]ourt considers [Deputy Brown's] requested relief against it[,]" and that Deputy Brown "may proceed with his petition for his requested relief against [Sheriff Porter]."

Shortly after the circuit court ruled that Deputy Brown could proceed with his petition for relief against Sheriff Porter, she hired a new employee, Corporal Mayes, who was directed to investigate the allegations against Deputy Brown.[3] On October 4, 2013, Corporal Mayes interviewed Deputy Brown. Thereafter, the internal investigation

_____

[3] It is unclear from the record the exact date when Corporal Mayes was hired. However, it is undisputed that Corporal Mayes was hired and the investigation into Deputy Brown began to move forward after the circuit court ruled that Deputy Brown could pursue a mandamus action against Sheriff Porter.

3

concluded, and Sheriff Porter issued a Notice of Termination, Statement of Charges, and Notice of a Right to a Hearing on December 16, 2013.[4]

After holding a hearing on all pending motions on January 27, 2014, the circuit court issued an order on February 7, 2014, ordering the Commission to "convene a hearing" on Deputy Brown's petition for reinstatement on or before May 11, 2014.[5] Further, the order provided that all other matters related to Deputy Brown's petition for mandamus relief would be held in abeyance.

The Commission held a hearing on Deputy Brown's petition for reinstatement on April 4, 2014. In a ruling issued on June 19, 2014, the Commission entered an order

> styled "Logan County Deputy Sheriff's Civil Service Commission Findings of Fact, Conclusions of Law and Final Order." Among other things, the Commission concluded that although not specifically provided for by statute, administrative leave with pay during the pendency of an investigation is within the authority of a sheriff, but the length and scope of the investigation must be reasonable in light of the allegations or complaints of misconduct. The Commission also determined that notice of the allegations must be given to the deputy without delay. Further, the Commission decided that an action of administrative leave with pay must follow the letter and spirit of the statute in terms of scope and reasonableness. The Commission specifically concluded that Deputy Brown was not given notice of the allegations he faced, and the length of Sheriff Porter's investigation exceeded its scope and reasonableness. Accordingly, the Commission ordered that Deputy Brown be reinstated to full duties as a Logan County deputy sheriff. Deputy Brown's counsel was ordered to submit an itemized statement of fees and expenses for consideration and further order of the Commission.

---

[4] The Notice of Termination and Statement of Charges are not part of the record before this Court.

[5] Sheriff Porter filed a motion to dismiss Deputy Brown's mandamus action on August 30, 2013. The circuit court denied this motion to dismiss in its February 7, 2014, order.

4

*Porter v. Brown*, No. 15-1213, 2017 WL 1345258, at *3 (W. Va. April 12, 2017) (memorandum decision) ("*Porter I*").[6]

We emphasize that Sheriff Porter did not file an appeal after the Commission entered its order reinstating Deputy Brown to the sheriff's department. Instead, in September 2014, Deputy Brown appealed the Commission's June 19, 2014, order to the circuit court (case number 15-AA-2), "raising several errors of fact and law." Deputy Brown sought back pay in his appeal of the Commission's order. Sheriff Porter filed a motion to dismiss Deputy Brown's appeal.

After holding a hearing on Sheriff Porter's motion to dismiss Deputy Brown's appeal, the circuit court issued an order in May 2015: 1) granting Sheriff Porter's motion to dismiss Deputy Brown's appeal, 2) ordering Deputy Brown's counsel to submit an invoice to the Commission for attorney's fees attributable to their work before the Commission, 3) ordering the Commission to enter a "Final Order" setting forth the exact amount of the attorney's fees the Commission awards Deputy Brown's counsel, and 4) ordering Deputy Brown's counsel to submit an invoice to the circuit court for fees and costs that were incurred in the mandamus action.[7]

On September 21, 2015, the Commission entered a "Final Order Granting Appellant [Deputy Brown] Fees and Costs" and ordered payment of $10,757.48 to Deputy Brown. On November 19, 2015, the circuit court entered an order specifying that Sheriff Porter was to pay an attorney fee award of $7,262.22. In December 2015, Sheriff Porter appealed the November 19, 2015, circuit court order to this Court, raising four assignments of error.[8]

---

[6] The Commission's order is not part of the record in the present case.

[7] While the circuit court ordered Deputy Brown's counsel to submit an invoice for the fees it incurred in the mandamus action in May 2015, the court subsequently held a hearing on such attorney's fees on July 16, 2015. It determined that an award of attorney's fees for the work performed in the mandamus action was appropriate.

[8] The four assignments of error raised by Sheriff Porter in *Porter I* are as follows:

> First, it was asserted that the circuit court erred in determining that Deputy Brown was entitled to a hearing before the Commission to challenge his placement on paid administrative leave. Second, it was claimed that the circuit court erred when it adopted the findings of the Commission in support of the award of attorney's fees. Third, Sheriff Porter asserted the circuit court erred in interfering with the lawful authority of the Sheriff, imposing requirements on the Sheriff

5

On April 12, 2017, this Court remanded the case back to the circuit court for further proceedings "as the parties and the circuit court deem necessary and appropriate." *Porter I* at *6. In *Porter I*, the Court noted, "[w]e are being asked to determine the appropriateness of attorney's fees in a vacuum. We cannot possibly assess the appropriateness of the attorney's fees when we are unable to determine if the litigation itself was appropriate. What findings of fact and conclusions of law supported the award of attorney's fees?" *Id.*

Following remand, the circuit court held a hearing on these outstanding issues. By order entered on July 26, 2018, the circuit court ruled: (1) that the paid administrative leave imposed upon Deputy Brown by Sheriff Porter "is determined to be discipline and punishment"; (2) that the Commission properly exercised jurisdiction over Deputy Brown's petition for reinstatement "as well as over his case for those purposes for which the Circuit Court compelled it to hold a hearing, and that, under the circumstances of this case, had jurisdiction to review the internal investigative activities of deputy sheriffs by the sheriff and the procedure for investigation and pre-disciplinary hearings of deputy sheriffs"; (3) that the circuit court properly exercised jurisdiction over the petition for a writ of mandamus that was filed by Deputy Brown and "could properly issue the same as it did in this case"; and (4) that Sheriff Porter pay Deputy Brown's attorney's fees in the amount of $8,136, plus costs of $44.22.

Following entry of this order, Sheriff Porter filed the present appeal.

## II. STANDARD OF REVIEW

Sheriff Porter appeals the circuit court's order to award attorney's fees to Deputy Brown in connection with the mandamus action. This Court has held that "[t]he standard of appellate review of a circuit court's order granting relief through the extraordinary writ of mandamus is *de novo*." Syl. Pt. 1, *Staten v. Dean*, 195 W. Va. 57, 464 S.E.2d 576 (1995). Further, insofar as Sheriff Porter's assignments of error concern statutory law, we have held that "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl. Pt. 1, *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 466 S.E.2d 424 (1995). Finally, this Court has explained that "[t]ypically, we have reviewed the reasonableness of the amount of an award of attorney's fees for an abuse of discretion."

---

beyond the authority of the Commission, and by apparently adopting and incorporating erroneous procedures enunciated by the Commission in its final order. Fourth, Sheriff Porter claimed there was no statutory, legal, or other basis for an award of attorney's fees in favor of Deputy Brown.

*Porter I* at *1.

*Daily Gazette Co., Inc. v. W. Va. Dev. Office*, 206 W.Va. 51, 57, 521 S.E.2d 543, 549 (1999).[9]  With these standards as guidance, we consider the parties' arguments.

### III. ANALYSIS

At the outset, we note that this appeal does not concern whether Deputy Brown will be reinstated to his position as a deputy—the Commission granted Deputy Brown's petition for reinstatement and Sheriff Porter did not appeal the Commission's order.  The only issue that will be resolved by our ruling herein is whether Deputy Brown is entitled to an attorney fee award for the work his counsel performed in the mandamus action.  However, Sheriff Porter seeks a broad holding from this Court defining the contours of how a sheriff may utilize "paid administrative leave" during the course of an internal investigation. We decline that invitation.  Instead, we will examine and address only the factual scenario before us—whether the circuit court abused its discretion when it entered an award of attorney's fees to a deputy sheriff who filed a mandamus action after he was placed on indefinite "paid administrative leave," and was subject to a number of conditions, including loss of secondary income, without being informed of the allegations against him for thirteen months.

Sheriff Porter raises several assignments of error in this appeal.  These assignments of error require us to examine three main issues: 1) whether Deputy Brown being placed on indefinite "paid administrative leave" and being subject to a number of conditions constituted "punitive action" under W. Va. Code § 7-14C-1 *et seq.*; 2) whether the circuit court erred by concluding that the "leave imposed on [Deputy Brown] is tantamount to suspension"; and 3) whether the circuit court lacked subject matter jurisdiction over this matter.[10]  Because these issues involve our statutes concerning the procedure for investigating a deputy sheriff, W. Va. Code 7-14C-1 *et seq.*, and civil service for deputy sheriffs, W. Va. Code § 7-14-1 *et seq.*, we begin our analysis with a review of our rules of statutory interpretation.

This Court has held that in deciding the meaning of a statutory provision, "[w]e look first to the statute's language.  If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed."

---

[9] "[T]he trial [court] . . . is vested with a wide discretion in determining the amount of . . . court costs and counsel fees, [sic] and the trial [court's] . . . determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that [it] has abused [its] discretion." Syl. Pt. 2, *Daily Gazette Co., Inc.*, 206 W. Va. 51, 521 S.E.2d 543 (internal quotation and citation omitted).

[10] Sheriff Porter raises seven assignments of error.  Because a number of these errors overlap and, in the interest of brevity, we consolidate related assignments of error. *See Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 401-02, 729 S.E.2d 231, 236-37 (2012) (consolidating related assignments of error).

*Appalachian Power Co.*, 195 W.Va. at 587, 466 S.E.2d at 438; *see also* Syl. Pt. 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970) ("Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."); and Syl. Pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."). Additionally, this Court has held that "[a] statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Sizemore v. State Farm Gen. Ins. Co.*, 202 W.Va. 591, 596, 505 S.E.2d 654, 659 (1998) (internal quotations and citation omitted).

Our review of W. Va. Code § 7-14C-1 *et seq.* reveals that the language of the statute is free from ambiguity and its plain meaning may be applied. The statute begins with a list of definitions (W. Va. Code § 7-14C-1), proceeds to describe the procedure for investigating a deputy (W. Va. Code § 7-14C-2), and then sets forth a deputy's right to a hearing before and after punitive action is taken (W. Va. Code § 7-14C-3).

The phrase "punitive action" is defined in W. Va. Code § 7-14C-1(3) as follows: "'Punitive action' means any action which may lead to dismissal, demotion, suspension, reduction in salary, written reprimand or transfer for purposes of punishment." West Virginia Code § 7-14C-2, entitled "[i]investigation and interrogation of a deputy sheriff," describes the procedure to be followed when a deputy sheriff is under investigation. It provides, in relevant part:

> When any deputy sheriff is under investigation and subjected to interrogation by his or her commanding officer, or any other member of the department, which could lead to punitive action, the interrogation shall be conducted under the following conditions:
>
> (a) The interrogation shall be conducted at a reasonable hour, preferably at a time when the deputy sheriff is on duty, or during his or her normal working hours, unless the seriousness of the investigation requires otherwise. If the interrogation does occur during the off-duty time of the deputy sheriff being interrogated at any place other than his or her residence, the deputy sheriff shall be compensated for that off-duty time in accordance with regular department procedure. If the interrogation of the deputy sheriff occurs during his or her regular duty hours, the deputy sheriff may not be released from employment for any work missed due to interrogation.

(b) Any deputy sheriff under investigation shall be informed of the nature of the investigation prior to any interrogation. The deputy sheriff shall also be informed of the name, rank and command of the officer in charge of the interrogation, the interrogating officers and all other persons to be present during the interrogation. No more than three interrogators at one time may question the deputy sheriff under investigation.

. . . .

Nothing herein prohibits the immediate temporary suspension from duty, pending an investigation, of any deputy sheriff who reports for duty under the influence of alcohol or a controlled substance which would prevent the deputy from performing his or her duties as defined in chapter sixty-a of this code, or under the influence of an apparent mental or emotional disorder.

Next, W. Va. Code § 7-14C-3(a), addressing a deputy's right to a hearing, provides, in relevant part, "[i]f the investigation or interrogation of a deputy sheriff results in the recommendation of some punitive action, then, *before taking punitive action the sheriff shall give notice to the deputy sheriff that he or she is entitled to a hearing on the issues by a hearing board.*" (Emphasis added).[11] This Court discussed W. Va. Code § 7-14C-3 in *Burgess v. Moore*, 224 W.Va. 291, 685 S.E.2d 685 (2009), holding in syllabus point 5: "W. Va. Code § 7-14C-3(a) (1995) (Repl. Vol. 2006) requires a sheriff to notify a deputy sheriff facing discipline of his/her entitlement to a hearing on the issues giving rise to such discipline 'before . . . punitive action' is taken." This Court described the two types of hearings that are contemplated by W. Va. Code § 7-14C-3 in syllabus point 6 of *Burgess*:

W. Va. Code § 7-14C-3 (1995) (Repl. Vol. 2006) contemplates two distinct types of hearings. The first type of hearing, which is governed by W. Va. Code §§ 7-14C-3(a & b), is a predisciplinary hearing, which is conducted before disciplinary action has been taken and is held before a hearing board. Alternatively, the second type of hearing, which is

---

[11] West Virginia Code § 7-14C-3(b) provides:

(b) The hearing shall be conducted by the hearing board of the deputy sheriff except that in the event the recommended punitive action is discharge, suspension or reduction in rank or pay, and the action has been taken, the hearing shall be pursuant to the provisions of section seventeen, article fourteen of this chapter, if applicable. Both the sheriff and the deputy sheriff shall be given ample opportunity to present evidence and argument with respect to the issues involved.

9

governed by W. Va. Code § 7-14C-3(b), is conducted after disciplinary action in the form of "discharge, suspension or reduction in rank or pay" has been taken and is held in accordance with the provisions of W. Va. Code § 7-14-17 (1996) (Repl. Vol. 2006).

Based on the plain language of W. Va. Code 7-14C-1 *et seq.*, a sheriff is required to do two things prior to taking punitive action against a deputy: 1) give the deputy notice of "the issues" accompanying the punitive action, and 2) notify the deputy that he or she is entitled to a hearing on the issues by a hearing board. In the present case, the circuit court determined that the actions Sheriff Porter took against Deputy Brown— placing him on indefinite leave and imposing numerous conditions including loss of secondary employment—constituted punitive action. We agree.

The plain language of W. Va. Code 7-14C-1(3) defining "punitive action" encompasses a wide variety of punishments that range from the severe ("dismissal") to the relatively minor ("written reprimand"). Deputy Brown was placed on indefinite "paid administrative leave" and was subject to a number of conditions including loss of previously approved secondary employment. He was also required to be at his house every weekday from 8:30 a.m. to 4:30 p.m., and was required to be "reasonably available for investigative purposes." We emphasize that there was no time limit on these conditions imposed against Deputy Brown. We find that the indefinite imposition of these conditions fall under the broad definition of "punitive action" contained in W. Va. Code § 7-14C-1(3). In particular, we conclude that depriving Deputy Brown of previously approved secondary employment, on an indefinite basis, is a more severe punishment than a written reprimand. Additionally, requiring Deputy Brown to hold himself available for investigative purposes on an indefinite basis, with no notice of the allegations against him, and requiring him to be in a specific location every weekday on an indefinite basis, is, at the very least, as severe as a "written reprimand."

Because the actions taken against Deputy Brown were punitive, we find that Sheriff Porter was required to provide Deputy Brown with notice of the issues underlying the punitive action, and notice that he was entitled to a hearing on these issues pursuant to the plain language of W. Va. Code § 7-14C-3(a): "before taking punitive action the sheriff shall give notice to the deputy sheriff that he or she is entitled to a hearing on the issues by a hearing board."[12]

---

[12] Additionally, we note that the Notice provided to Deputy Brown provided that "[t]his investigation could lead to punitive action up to and including termination of employment." West Virginia Code § 7-14C-1(3) provides that punitive action "means any action which *may lead* to dismissal, demotion, suspension, reduction in salary, written reprimand or transfer for purposes of punishment." (Emphasis added). Similarly, W. Va. Code § 7-14C-2 refers to an investigation that "could lead to punitive action." Because the

10

Next, we address whether the indefinite "paid administrative leave" was tantamount to a suspension. In reviewing this issue, we note that Deputy Brown does not argue, and the circuit court did not rule, that a sheriff may never place a deputy on paid administrative leave. Instead, Deputy Brown argues, and the circuit court ruled, that the "paid administrative leave" in this case was, in essence, a suspension. West Virginia Code § 7-14-17(a) requires a deputy sheriff who has been suspended to be given written notice of the reason for the suspension and the opportunity to demand a hearing before the Commission.[13]

---

Notice given to Deputy Brown clearly provided that the investigation could lead to punitive action, we find that he was entitled to the due process guarantees contained in W. Va. Code § 7-14C-1 *et seq.* (notice of the issues underlying the punitive action and notice that he was entitled to a hearing).

[13] West Virginia Code § 7-14-17(a) provides, in full:

> (a) No deputy sheriff of any county subject to the provisions of this article may be removed, discharged, suspended or reduced in rank or pay except for just cause, which may not be religious or political, except as provided in section fifteen of this article; and no such deputy may be removed, discharged, suspended or reduced in rank or pay except as provided in this article and in no event until the deputy has been furnished with a written statement of the reasons for the action. In every case of such removal, discharge, suspension or reduction, a copy of the statement of reasons therefor and of the written answer thereto, if the deputy desires to file such written answer, shall be furnished to the civil service commission and entered upon its records. If the deputy demands it, the civil service commission shall grant a public hearing, which hearing shall be held within a period of ten days from the filing of the charges in writing or the written answer thereto, whichever shall last occur. At the hearing, the burden shall be upon the sheriff to justify his or her action, and in the event the sheriff fails to justify the action before the commission, then the deputy shall be reinstated with full pay, forthwith and without any additional order, for the entire period during which the deputy may have been prevented from performing his or her usual employment, and no charges may be officially recorded against the deputy's record. The deputy, if reinstated or exonerated, shall, if represented by legal counsel, be awarded reasonable attorney fees to be determined by the commission and paid by the

11

Sheriff Porter concedes that the phrase "paid administrative leave" is not contained in W. Va. Code §§ 7-14C-1 *et seq.* or 7-14-17(a). However, she asserts that such leave has been recognized as an appropriate investigative action in a number of decisions from this Court.[14] Further, Sheriff Porter notes that "paid administrative leave" is specifically authorized by 81 W. Va. C.S.R. § 81-10-10.72. This C.S.R. section, entitled "West Virginia State Police[15] Professional Standards Investigations Employee Rights . . ." provides:

> 7.2. By virtue of W. Va. Code § 15-2-21, the Superintendent has the sole discretion to demote, discharge, and suspend employees from duty. The Superintendent, upon receiving a complaint against an employee or upon otherwise learning of misconduct by an employee, *may temporarily relieve the employee from duty* pending further investigation, with or without compensation, pursuant to State Police operating policy and procedure. During any administrative leave attendant to an internal investigation or inquiry, the employee shall surrender his or her State Police identification, and if a member, badges, State Police issued weapons, or other State Police property in his or her possession or control. Further, members shall be relieved of any police authority during the pendency of any administrative leave.

sheriff from county funds. A written record of all testimony taken at the hearing shall be kept and preserved by the civil service commission, which record shall be sealed and not be open to public inspection unless an appeal is taken from the action of the commission.

[14] Sheriff Porter cites a number of cases from this Court that deal with an employee being placed on administrative leave including *In re Atterson*, No. 17–0506, 2018 WL 2753849 (W. Va. June 8, 2018) (memorandum decision); *Winkler v. City of Princeton*, No. 14–1021, 2015 WL 4168174 (W. Va. July 9, 2015) (memorandum decision); *City of Weirton v. Sims*, No. 14–0279, 2014 WL 4746206 (W. Va. Sept. 23, 2014) (memorandum decision); and *In re Fouty*, 229 W.Va. 256, 728 S.E.2d 140 (2012). None of these cases involve a factual scenario analogous to the current matter—an employee being placed on indefinite leave and being subject to punitive action without being provided with notice of the allegations underlying the action and without being given a hearing on the issues underlying the punitive action.

[15] We note that this C.S.R. section applies explicitly to "West Virginia State Police," rather than to sheriff's departments.

(Emphasis added).

In addition to the foregoing, another section of the "West Virginia State Police Professional Standards Investigations Employee Rights" C.S.R. requires an employee who is placed on "administrative leave" to receive notice of the general allegations. 81 W. Va. C.S.R. § 81-10-10.1, -10.3.2, -10.3.3 provide, in relevant part:

> 10.1. This program provides a process for mandatory psychological review of employees in situations where an employee's job performance or actions may be detrimental to the State Police's mission and cause the employee's psychological fitness for duty to be in question.
>         . . . .
> 10.3.2. The Superintendent *may place an employee involved in a critical incident as defined by this rule or whose psychological fitness for duty is in question on administrative leave*, with or without pay pursuant to State Police operating policy and procedure. . . .
>
> 10.3.3. If a psychological fitness for duty is considered appropriate by the Superintendent, *the employee shall be notified* as required for internal or administrative investigations. *The notification shall include a statement of the general circumstances that prompted the action*, and the appointment time, date, and location of the meeting with a psychotherapist designated by the State Police. . . .

(Emphasis added).

In the present case, Deputy Brown was placed on "paid administrative leave" without any statement describing the general allegations against him and with only a vague reference to a future meeting with an investigator (Corporal Ferrell "will contact you in the near future to schedule all necessary interviews."). Corporal Ferrell never contacted or interviewed Deputy Brown. Further, the West Virginia Code of State Regulations cited by Sheriff Porter only permits an employee to be "temporarily relieve[d] . . . from duty pending further investigation." 81 W.Va. C.S.R. § 81-10-10.72. The undisputed facts of this case demonstrate that Deputy Brown was not "temporarily relieved" from duty. After spending five months on "paid administrative leave" with no notice of the charges against him and with no timeframe of how long the "paid administrative leave" would last, Deputy Brown filed his first request for a hearing before the Commission. Crucially, Deputy Brown did not receive notice of the charges against him until he instituted his mandamus action against Sheriff Porter. We find no language in the state regulations or in W. Va.

13

Code § 7-14C-1 *et seq.* that authorizes the type of leave Sheriff Porter characterized as "paid administrative leave"—indefinite leave, accompanied by numerous conditions including loss of secondary employment, without notice of the general allegations underlying such leave. Therefore, we reject Sheriff Porter's argument that the state regulations and prior rulings from this Court permit the indefinite "paid administrative leave" that was imposed on Deputy Brown. We agree with the circuit court that "the leave imposed on [Deputy Brown] is tantamount to suspension and placing [him] on such leave for many months certainly became excessive and punitive."

Based on our conclusion that the paid administrative leave in this case was tantamount to a suspension, we also reject Sheriff Porter's argument that the attorney fee award was improper because the circuit court lacked subject matter jurisdiction. This Court has stated that "[j]urisdiction implies or imports the power of the court . . ." Syl. Pt. 9, in part, *Hinerman v. Daily Gazette Co.,* 188 W.Va. 157, 423 S.E.2d 560 (1992). "Jurisdiction is not related to the rights of the parties but concerns the power to decide a justiciable controversy between the parties." *Hanson v. Bd. of Educ. of the Cty. of Mineral*, 198 W.Va. 6, 11 n.3, 479 S.E.2d 305, 310 n.3 (1996). Further,

> [j]urisdiction consists of two elements. One of these elements is jurisdiction of the subject matter and the other is jurisdiction of the person. Jurisdiction of the subject matter must exist as a matter of law. Jurisdiction of the person may be conferred by consent of the parties or the lack of such jurisdiction may be waived.

Syl. Pt. 4, W.Va. *Secondary Sch. Activities Comm'n v. Wagner*, 143 W.Va. 508, 102 S.E.2d 901 (1958). In syllabus point 3 of *State ex rel. Smith v. Bosworth*, 145 W.Va. 753, 117 S.E.2d 610 (1960), this Court held "[t]o enable a court to hear and determine an action, suit or other proceeding it must have jurisdiction of the subject matter and jurisdiction of the parties; both are necessary and the absence of either is fatal to its jurisdiction."[16]

We need not linger on this issue. Sheriff Porter's jurisdiction argument is premised entirely on her contention that the indefinite "paid administrative leave" did not constitute a suspension, and that none of the conditions imposed on Deputy Brown constituted "punitive action." Because we agree with the circuit court that Deputy Brown was suspended and that some of the conditions imposed on him were punitive, Sheriff Porter's jurisdiction argument fails.

---

[16] A circuit court has jurisdiction to hear a mandamus action brought by a deputy invoking his or her due process rights under W. Va. Code § 7-14C-1 *et seq. See Matheny v. Scolapio*, 240 W. Va. 30, 807 S.E.2d 278 (2017).

14

Finally, we briefly address the circuit court's award of attorney's fees and costs. This Court has held that attorney's fees and costs may be recovered in a mandamus action. "Costs and attorney's fees may be awarded in mandamus proceedings involving public officials because citizens should not have to resort to lawsuits to force government officials to perform their legally prescribed nondiscretionary duties." Syl. Pt. 1, *State ex rel. W. Va. Highlands Conservancy, Inc. v. W. Va. Div. of Envtl. Prot.*, 193 W.Va. 650, 458 S.E.2d 88 (1995). Additionally, in syllabus point 2 of *Highlands Conservancy*, this Court held:

> Attorney's fees may be awarded to a prevailing petitioner in a mandamus action in two general contexts: (1) where a public official has deliberately and knowingly refused to exercise a clear legal duty, and (2) where a public official has failed to exercise a clear legal duty, although the failure was not the result of a decision to knowingly disregard a legal command.

*Id.*

In the present case, the circuit court's order includes a detailed discussion of the facts underlying this matter, as well as an in-depth recitation of our case law on attorney's fees. Based on our finding that Deputy Brown did not receive the due process protections that he was entitled to under W. Va. Code § 7-14C-1 *et seq.*, we agree with the circuit court's conclusion that Deputy Brown was entitled to an award of attorney's fees and costs incurred in the course of bringing the mandamus action.

Therefore, we affirm the circuit court's July 26, 2018, order awarding Deputy Brown $8,136 in attorney's fees and $44.22 in costs.

Affirmed.

ISSUED: November 13, 2019

**CONCURRED IN BY:**
Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

15